# WILLIAM T. CLINKENBEARD et al., Appellants, v. HENRY REINERT et al.

### In Banc, November 20, 1920.

1. **DOG BITE: Pleading: Variance.** Where the petition charges that plaintiffs' child was bitten by a known vicious dog, then owned, kept and harbored by defendants, and that the child died from the effect of such bites, but does not aver that the dog was rabid or that the child died from rabies, and the proof shows that the dog was rabid and that the child died from rabies, there is not a fatal variance between the pleading and proof, for the child did die from the bite of a vicious dog.

2. ———: **Known Viciousness: Liability of Owner: Negligence.** If a person keeps unrestrained a vicious dog after he has knowledge of its vicious and dangerous propensities, he is liable for damages to others resulting from the acts of such dog in the exercise of the vicious propensities of which he had knowledge, without proof of negligence in the manner of keeping it, for the keeping of such dog at all is wrongful. And proof that the dog, belonging to defendants, was kept tied up, except at nights, when it was loosed as a watch dog, is sufficient to show they had knowledge of the vicious disposition of the dog, and to render them liable in damages for the death of a child from wounds inflicted by the dog's bite.

3. ———: **Known Viciousness: Unknown Rabies.** The gist of the action for damages resulting from the bite of a vicious dog is the keeping of the dog after knowledge of its dangerous and vicious propensities come to the owner, keeper or harborer. Such a dog is a nuisance, and the keeping of it at all is wrongful; and it is the duty of its keeper or the owner, for the protection of the public, to kill or safely restrain it. And where defendants, long before their dog bit plaintiffs' child, knew its vicious and dangerous propensities, they are liable for the child's death from rabies, although the dog suddenly became mad without their knowledge, and, being unrestrained, bit the child at a point some distance from the premises where it was usually kept as a watch dog. Knowing the vicious propensities of the dog, defendants should have killed it or kept it safely restrained, and after they acquired such knowledge they at all times kept it at their peril, and are liable for any increased menace to the public arising from the dog's subsequent affliction with rabies.

4. ———: ———: ———: **Liability Under Ordinance and At Common Law.** Both at common law and under a city ordinance which prohibited any person from owning, keeping or harboring in the city any dog "which is vicious or dangerous," the keeping of a vicious dog, with knowledge of its vicious and dangerous propensities, renders the owner or keeper liable for injuries thereafter inflicted by its bite, including the increased menace resulting from rabies, although such owner or keeper did not know it was afflicted with rabies.

*Held,* by BLAIR, J., concurring, that the language of the ordinance is absolute, and for all injuries resulting from keeping a vicious or dangerous dog the owner or keeper is liable in damages; but expressing no opinion as to the liability at common law for injuries inflicted by a mad dog, whose viciousness was known, but whose affliction with rabies was not known.

*Held,* by WOODSON, J., first, that the evidence conclusively showing that the child would not have died from the bite had the dog not been afflicted with rabies, and that defendants had no knowledge that the dog was so afflicted at the time or before it bit the child, they are not guilty of negligence causing or contributing to the injuries which resulted in the child's death, and therefore are not liable at common law for damages; *second,* that if defendants had complied with the ordinance which prohibited all persons from keeping a vicious or dangerous dog, no injury could have been inflicted upon the child by the dog, whether mad or only vicious, and therefore defendants are liable under the count based on a violation of the ordinance.

Appeal from Buchanan Circuit Court.—*Hon. L. A. Vories,* Judge.

REVERSED AND REMANDED.

*J. W. McKnight* and *Mytton & Parkinson* for appel-lants.

(1.) When it is established that a dog is of a vicious or mischievous nature and that the person owning it or keeping it has actual or constructive knowledge of that fact, the owner keeps it at his peril, and is charge-able for any failure to. so keep it that it cannot do any damage to any person who, without essential fault, is injured by it. 3 C. J. 98; Speckmann v. Kreig, 79 Mo. App. 376; O'Neill v. Blase, 94 Mo. App. 648; Merritt v. Matchett, 135 Mo. App. 176; Holt v. Meyers, 47 Ind. 118; Perotta v. Picciano, 175 N. Y. Supp. 16. (2) The fact that the dog is kept as a watchdog and is kept tied in the day and turned loose at night is notice to the master that he is dangerous. Speckmann v. Kreig, 79 Mo. App. 376; Brice v. Bauer, 108 N. Y. Supp. 428; Hanke v. Fredericks, 140 N. Y. 224. (3) The owner or keeper of a dog of known vicious propensity, in viola-tion of a statute or ordinance, is liable for injury caused by the dog being at liberty while afflicted with rabies, although he did not know or have reason to believe that the dog was mad. Elliott v. Herz, 29 Mich. 204; Van Etten v. Noyes, 112 N. Y. Supp. 888; Jenkinson v. Cog-gins, 81 N. W. 974; Legault v. Malacker, 163 N. W. 478.

*W. N. Linn* and *John E. Heffley* for respondents.

(1) Appellants' petition contained two counts; one charging common law negligence, and the other charg-ing negligence under the revised ordinances of the city. Both counts charge the death of appellants' child by being bitten by a vicious dog, alleged to have been owned

and kept by respondents. The evidence shows conclusively that the child died from hydrophobia, by being bitten by a dog afflicted with rabies—a fatal variance between the allegations contained in the petition and the proof. It is a well settled law that plaintiff cannot sue upon one cause of action and recover upon another. Madden v. Ry. Co., 167 Mo. 143; Gibeline v. Smith, 106 Mo. App. 545; Henry County v. Citizen's Bank of Windsor, 208 Mo. 209. (2) Very few cases of this kind has been tried in the courts of this country, and none in this State. It has been conclusively held that the owner or keeper of a dog afflicted with rabies is not liable for the acts of the rabid dog (with the possible exception that the owner knew, or had means of knowledge of the dog's rabid condition, and negligently failed to restrain or destroy it). State ex rel. v. Ellison, 271 Mo. 463; Legault v. Malacker, 166 Wis. 58; Elliot v. Herz, 29 Mich. 202; Van Etten v. Noyes, 128 App. Div. 406, 112 N. Y. Supp. 888.

GRAVES, J.—Action by plaintiffs (husband and wife) for the death of their daughter of the age of about six years. The child was bitten by a dog on December 17, 1913, and died January 25, 1914, from rabies. The petition is in two counts. The first charges common law negligence in that "the defendants negligently kept and owned and harbored on their premises a dog of mischievous and vicious propensities that was disposed to bite or attack or injure a person, all of which facts were well known to defendants."

The second count is based upon ordinance negligence, and specifically pleads two sections of ordinances of the City of St. Joseph relating to owning, keeping or harboring vicious dogs and other vicious animals, and defining the terms "keeping and harboring" as used in such ordinances.

Upon a trial, the court upon the conclusion of the evidence for the plaintiffs, gave a peremptory instruc-

tion to the jury to find the issues for the defendants, and thereupon plaintiffs took an involuntary nonsuit. Without avail the plaintiffs moved to set aside their involuntary nonsuit, and ·the case is here upon their appeal.

The evidence tends to show the vicious character of the dog, and that defendants had knowledge of the vicious character of the dog. It further tends to show that the child of plaintiffs was bitten by this dog of the defendants at a point some distance from the premises upon which the dog was usually kept as a watch dog. Further the testimony of witnesses shows that upon the day this child, and a young man was bitten by this dog, the animal was mad, or suffering from rabies. The head of the dog was examined by Dr. Logan, who does the "bacteriology and chemistry work for the Board of Health" of the City of St. Joseph, and the doctor says that the dog had rabies. There is no evidence showing· that defendants knew that the dog was afflicted with rabies. The evidence shows that the little girl died of rabies, and not from the physical effects of the wounds inflicted by the dog, excluding the virus imparted by reason of the rabid condition of the dog.

Defendants urge that the peremptory instruction was proper for two reasons: (1) that the petition charges that the child died from wounds inflicted by a vicious dog, whereas the proof shows that she died of rabies, and (2) that there was no proof that defendants had any knowledge of the dog being afflicted with rabies. From·this it will be observed that the issues upon appeal are narrow.

I. We are not impressed with the ·contention of the respondent to the effect that plaintiffs sued upon one cause of action, and proved another. In other words, that there was a fatal variance between the pleadings and proof. We think the real ques-tion is the sufficiency of the proof. It is true that the petition only charges that plaintiffs' child was bitten

Variance.

by a known vicious dog, then owned, kept and harbored by defendants. It does not aver that the dog was rabid, or that the child died from rabies. It does aver that the child died from the effects of bites inflicted by defendants' known vicious dog. The child did so die. But for the bite of the vicious animal, the child might be living now. So that we rule that it is not so much a question of fatal variance between the petition and the proof, but rather a question of the sufficiency of the proof, as measured by the law on the facts shown. It is true that we universally rule that one cannot sue upon one cause of action, and recover upon another and different cause of action, as shown by his facts. To such cases we are cited by respondent, but they have no application here. The petition charged that this child came to her death by a dog bite inflicted by a vicious dog belonging to defendants. The proof so shows. Whether the fact that the dog was rabid (under the facts shown) defeats plaintiff's case, we leave for further discussion.

II. The proof shows that defendants had knowledge of the vicious disposition of their dog. He was kept tied up, except at nights, when he was loosened as a watch dog. Had this child died from **Liability: Knowledge.** wounds inflicted by this dog (excluding the question of rabies) there would be no question of liability. In 3 Corpus Juris, page 97, the rule is thus stated:

"At common law, the owner of a dog is not liable for injuries caused by it, unless it is vicious and notice of that fact is brought home to him. But when it is once established that the dog is of a vicious or mischievious nature, and that the person owning or keeping it has knowledge of that fact, the same responsibility attaches to the owner to keep it from doing mischief as the keeper of an animal naturally ferocious would be subject to, and proof of negligence on the part of the owner of the dog is unnecessary."

To like is 2 Am. & Eng. Ency. Law. (2 Ed.), page 366, whereat it is said:

"The owner of a vicious dog, knowing of his dangerous propensities, is bound to keep him secure at his peril, and if any one, without negligence on his part, is injured by the animal, the owner will be liable for all the damages sustained."

And on page 367 et seq., it is added:

"The gist of the action is the keeping of the animal with knowledge of its vicious propensities.

"A Prima-Facie Liability.—So that one who keeps a dangerous dog with knowledge of its vicious propensities incurs a prima-facie liability for any injury caused by it.

"And proof of negligence on the part of the defendant is not necessary, as it will be presumed."

And 1 Ruling Case Law, page 1089, says:

"The owner of an animal not naturally vicious is not answerable for an injury done by it when in a place where it had a right to be, unless it was in fact, and to his knowledge, vicious. If, being theretofore of a peaceable disposition, it suddenly and unexpectedly, while in charge of its owner or his servants, inflicts injury on another, neither, if at that time in the exercise of due care, is answerable. But if one knowingly keeps a vicious or dangerous animal, which is accustomed to attack and injure mankind, he is prima-facie liable for injuries done by it, without proof of negligence as to the manner of keeping it. The negligence on which the liability is founded is keeping such an animal with knowledge of its propensities. Thus it is evident that as respects the liability of the owner there is no distinction between the case of an animal which breaks through the tameness of its nature, and is fierce, and is known by its owners to be so, and one which is *ferae naturae*. But while the ancient rule as generally found stated is that the gist of an action for injuries inflicted by a ferocious animal is keeping it, with knowledge of its

vicious propensities, negligence or the want of negligence being deemed immaterial, to some courts a more accurate statement of the true principle governing the owner's legal responsibility seems to be that the gist of the action is the failure to keep such animals securely.''

We are cited to no dog case from this court, and have found none of value here. However, our Courts of Appeals have ofter spoken upon the subject. Among those decisions are: Speckmann v. Kreig, 79 Mo. App. 376; O'Neill v. Blase, 94 Mo. App. 648, and Merritt v. Matchett, 135 Mo. App. 176. The O'Neill case, supra, is not really a dog case, but the rule which applies to vicious dogs applied alike to other vicious animals. In the Speckmann case, supra (79 Mo. App. l. c. 381), BLAND, P. J., said:

''The contention of appellant is that the basis of the action is negligence, and that his refused instructions should have been given. If it was incumbent on the plaintiff to entitle him to recover to show that defendant negligently sent him to the barn then the appellant's contention is undoubtedly correct. The evidence leaves no room for the shadow of a doubt that defendant knew of the vicious propensity of the dog. The fact that a dog is kept as a watch dog (as this one was) and is kept tied in the day and turned loose at night, is notice to the master that he is dangerous. [Brice v. Bauer, 2 Am. St. 458; Brice v. Bauer, 108 N. Y. 428; Montgomery v. Koesler, 35 La. Ann. 1091; Good v. Martin, 57 Md. 606.] Defendant's own testimony shows that he knew the dog was dangerous and that he knew or had good reason to believe the dog was loose at the time the plaintiff went into the yard; indeed *scienter* by defendant of the vicious propensity of the dog is not controverted. The law is, the dog being a vicious one, of which propensity the defendant had knowledge, he kept it at his peril. [Strauss v. Lieff, 46 Am. St. 122; Conway v. Grant, 30 Am. St. 145; Sylvester v. Maag, 35 Am. St. 874; Wolff v. Chalker, 81 Am. Dec. 175; McCaskill

v. Elliott, 53 Am. Dec. 706; Arnold v. Morton, 25 Conn. 92; Smith v. Palah, 2 Str. 1264.] And the gist of the action for injury by the dog, after knowledge of its vicious propensities had been acquired by defendant, is not negligence in the manner of keeping the dog, but is for keeping it at all. The duty of the defendant when he acquired knowledge of the ferocious. disposition of his dog 'was to hang it,' not to keep it, at the risk of the lives and limbs of children and of adults who might lawfully come upon or pass by his premises at night. [May v. Burdett, 9 Q. B. 10; Jones v. Perry, 2 Esp. 482; Mason v. Keeling, 12 Mod. 332; Wheeler v. Brant, 23 Barb. 324; Lynch v. McNally, 73 N. Y. 347; Muller v. McKesson, 73 N. Y. 195, and cases cited.] 'Such an animal is a nuisance, and the keeping of it after notice of its ferocious propensity is so wrongful that the owner is chargeable for any neglect to keep it with such care that it can not do any damage to any person who without essential fault is injured by it.' [Mann v. Reed, 4 Allen, 431; How v. McNamara, 106 Mass. 281; Fish v. Skeet, 21 Barb. 333; 2 Wood on Nuisances, sec. 776; Massel v. Bowman, 62 Ia. 57; Mauer v. Wecandid, 81 Pa. St. 243.] Under the conceded facts there was no question of negligence or of contributory negligence in the case. The vicious propensity of the dog is so well established, of which the defendant had knowledge, that under the authorities herein cited, and under his duty to his fellowman as a member of society, he was bound to so restrain his dog as to prevent injury being inflicted by it upon any one, without essential fault contributing thereto."

The other cases cite and approve this case. So that we rule that if a person keeps unrestricted a vicious dog after he has knowledge of that fact, he is liable for the damages resulting from the acts of such animal in the exercise of the vicious propensities of which the owner or keeper or harborer had knowledge. Plaintiffs made a case for the jury, unless the fact that the vicious

dog also had rabies changes the case. Of this question, next.

III.. From the authorities (and a list of them is cited in 1 R. L. C. supra) the gist of the action is the keeping of a vicious dog, after knowledge of his vicious propensities. The duty which the owner then owes to humanity is to kill it. Such was the rule as announced by BLAND, P. J., in Speckmann's case, supra. But the question here is whether or not the rabies in this dog (not known by defendants) changes this rule? We start with the proposition that when the owners of this dog were advised of his propensity to attack people, then under the case law, it was their duty either to kill the animal, or at least (according to some cases) to keep him securely confined so that he could not injure people. This duty was an absolute one, and one which the owner owed to all, including this child, and her parents. A breach of that duty, which results in injury, carries with it the resulting damages. On the vital point in this case we are cited to some three cases, first among them being Elliott v. Herz, 29 Mich. 202. The opinion there was by COOLEY, J., and concurred in by CAMPBELL, J.; GRAVES, C. J., dissented in an opinion filed, and CHRISTIANCY, J., did not sit. So the opinion is by two of the then four members of that court. In that opinion Judge COOLEY does use this language:

"The injury from the bite of a rabid dog must be classed with those from inevitable accident, which the law always leaves to rest where they chance to fall, be- cause, as no one was in fault, there is no basis for an assessment of damages against any one."

The dog in question was mad and killed and injured some sheep. The action was under a Michigan statute, which made the owner of a dog liable without proof that such owner had knowledge of the vicious propensi- ties of the dog. Under that statute the learned judge writing the majority opinion said that the statute did not cover the madness of the dog. The dissenting opin-

ion holds to the contrary. The whole case turns upon the statute and the construction to be placed upon it. There was nothing in the case to show that there was a common law duty to either kill or restrain this particular dog for months prior to the injury and the madness of the dog, as we have in this case. In this case the knowledge of the vicious propensities of the dog created a legal duty to kill the animal, or at least to keep him safely restrained. So the real question in this case was not before Judge COOLEY.

The next case relied upon by defendants is Legault v. Malacker, 166 Wis. 58. This was an action by the parents for the death of child, which died from the bite of a mad dog. The action was under a statute, which the court concedes to be very similar to the statute in the Michigan case, supra. The opinion is by a divided court, and there is a vigorous dissent. The majority opinion rests upon the opinion of COOLEY, J., in the Michigan case and the minority opinion is bottomed in a way upon the opinion of GRAVES, C. J., in the Michigan case, supra. The statute permitted recovery without proof of knowledge upon the part of the owner that the dog was vicious. What we have said above about the Michigan case, as compared with the case at bar, applies with full force to this case from Wisconsin. It does not reach the case we have here. In it there was no evidence showing a duty upon the part of the owner of the dog to kill it, or at least restrain it from running at large, long prior to the appearance of rabies. So this case lends but little light.

The next case relied upon is that of Van Etten v. Noyes, 112 N. Y. Supp. 888. In reviewing the evidence the court specifically holds that there was not sufficient evidence to show that the owner had knowledge of vicious propensities upon the part of her dog. The court further indicates clearly that the dog became suddenly mad, and whilst thus affected with rabies bit plaintiff's cow. No pretense that defendant either knew

of the vicious character of the dog prior to the date of its affliction with rabies, or that the owner knew of the rabid condition of the dog prior to the injury to the cow. So this case sheds no more light upon our case, and the point we have for decision, than do the other two cases. This disposes of the cases relied upon by respondent.

Before going to the real point in this case we want to say that where a dog, not theretofore possessed of vicious propensities, suddenly becomes mad, or affected with rabies, and the owner of such dog has no knowledge of the affliction in time to kill or restrain the animal, prior to the infliction of an injury to a person or other animals by such rabid dog, there is no liability upon the part of the owner. This is the universal case law. It is common knowledge that mad dogs will bite and attack persons and other animals, but if the owner does not know that his dog is rabid, he is not at fault for not killing or restraining him, provided he had not theretofore been possessed of vicious propensities, to the owner's knowledge. But such is not the status of the case before us, and to the real point in this case we now come.

In the instant case the owners were, long before the incident which brought about the horrible and untimely death of this little girl, fully advised of the vicious propensities of the dog. When so advised it became their absolute duty, for the protection of the public, to either kill or safely restrain their dog. A failure to do one or the other rendered them liable. The trend of our Court of Appeals is to require the killing of the vicious dog, rather than his restraint. Much authority elsewhere is to the same effect, and we are disposed to, and do, adopt the more rigid rule of our Court of Appeals. A vicious dog is a nuisance, and should be removed, as you would remove the venomous rattlesnake—by death. Of all animals the dog is the one most prone to rabies. This the defendants knew, because a matter of common knowl-

edge.   We shall not speculate upon the theory that a vicious dog in health would be more prone toward vicious acts when afflicted with rabies.   But what we do say is, that defendants, had they performed the duty which they owed to the public and to this child and her parents, as a part and portion of that public, would have killed the dog months prior to this accident.   Knowings its vicious propensities they kept the dog at their own peril and not at the peril of the public.   The dog was a menace to the public prior to his affliction with rabies.   The affliction increased this menace, but defendants kept him at their peril, and should be made to respond for such damages as he did, although rabies intervened.   The dog with growing age might have become more vicious, yet this would not excuse defendants who were prolonging his life by their failure to perform the duty which they owed to the public.   As they, from the time they first acquired knowledge of the vicious character of the dog, were keeping him at their peril. Any change in the condition of the dog, whether by increased viciousness in the normal dog, or frensy of the afflicted dog, was but an increase in their peril, brought about by their own wrongful act in the first instance, i. e. their failure to kill the vicious dog.

This is a case (on the peculiar facts) of first impression in this court, and elsewhere, so far as we have been able to find.   This, because the cases discussing liability for bites from a rabid dog, so far as we read them, do not have in them the fixed duty of the master to have disposed of the dog long prior to the appearance of the rabies.

Plaintiffs made out a case for the jury under both counts of their petition.   Our discussion has been along the line of the common law count, but the liability is not less plain under the ordinances.   The failure to perform a duty to the public is the crux of each count.   The judgment is reversed and the cause remanded.

PER CURIAM:—The foregoing opinion of GRAVES, J., in Division No. One, is adopted by Court in Banc as the opinion of said court. All concur; *Blair* and *Woodson, JJ.,* in separate opinions.

WOODSON, J. (concurring in part and dissenting in part).—I concur as to that part of the opinion based upon the second count of the petition, but I am of the opinion that no liability is shown upon the first count. My reasons for so stating are: The evidence conclusively shows that the deceased child would not have died from the effects of the bite had the dog not been afflicted with rabies, and the evidence also conclusively shows that the defendant had no notice or knowledge whatever that the dog had rabies before, or at the time, it bit the child. That being true he was guilty of no negligence which caused or contributed to the injury which caused the death of the child, and therefore he is not liable in damages for the death that ensued therefrom.

I concur in that part of the opinion which is based upon the second count of the opinion, for the reason that had the ordinance mentioned therein been complied with by the defendant, no injury could have been inflicted upon the child by the dog, whether it had been mad or sane. Under the authority of Sluder v. Transit Co., 189 Mo. 107, and Jackson v. Railway Co., 157 Mo. 621, and cases cited, the validity of said ordinance cannot be, at this late date, questioned.

BLAIR, J. (concurring).—The authorities cited in the opinion state the common law applying to one who keeps a ''dangerous dog, with knowledge of his vicious propensities.'' This rule might not extend beyond the reasons which apparently give rise to it. There are decisions which proceed upon arguments which tend to support such a view. In this case a city ordinance was in force which prohibited any person from owning, keeping or harboring in the city any ''dog . . . wolf, fox or other domestic or wild animal which is vicious or

dangerous." This description defines the classes of animals to be affected, but the prohibition against owning, keeping or harboring animals within the classes defined is absolute. The evidence tends to show defendant's dog fell within the ordinance. In keeping him at all defendants violated this ordinance. The prohibition of the ordinance is not qualified by the language used to describe the classes prohibited from being kept in the city. In my opinion the absolute requirement of the ordinance was intended to mean what it says, and thereby provide against all damages which might be done by animals of the designated classes. The ordinance differs from the statutes considered in Elliott v. Herz, 29 Mich. 202, and Legault v. Malacker, 166 Wis. 58. Those statutes were held to be designed to obviate the necessity for proving *scienter*. That holding is not applicable to this ordinance. For these reasons, I concur in the result of the opinion in this case. *Woodson, J.*, concurs.