ADA C. PATTERSON, RESPONDENT, v. LEON ROSENWALD, ET AL., APPELLANTS.*

Kansas City Court of Appeals.   May 21, 1928.

*Corpus Juris-Cyc References:  Animals, 3CJ, section 344, p. 105, n. 8; section 345, p. 106, n. 23; section 349, p. 108, n. 52; p. 109, n. 53; section 382, p. 121, n. 39; section 384, p. 122, n. 45; Appeal and Error, 4CJ, section 2617, p. 706, n. 2; Trial, 38Cyc, p. 1671, n. 12.

974

*L. N. Musser* for respondent.

*Ringolsky, Friedman, Boatwright & Jacobs* for appellant.

BLAND, J.—This is an action for damages to plaintiff caused by the bite of a vicious dog which, it is claimed, was kept and harbored by defendants with knowledge of its vicious propensities. There was a verdict and judgment in favor of plaintiff in the sum of $1000. However, as a condition for the overruling of the motion for a new trial, the court required plaintiff to remit the sum of $300 and judgment was entered for the sum of $700. Defendants have appealed.

The facts show that defendants are husband and wife and with their two daughters lived in Kansas City, Missouri, about a block from where plaintiff resided with her husband and daughter. Defendants do not contend that there was not sufficient evidence to go to the jury, tending to show that the dog was vicious, and *scienter* on the part of defendants, but insist that plaintiff was guilty of contributory negligence as a matter of law. The evidence shows that the dog which bit plaintiff was a large, fully grown Airedale; that for more than a year prior to the day it attacked plaintiff it evidenced vicious propensities in that it would jump at and upon persons in an ugly manner; that it would snap at people and on one occasion without any provocation tore the seat of a man's trousers; that it showed a disposition to fight other dogs and would run dogs onto the porches of their masters and when the pursued dog was admitted to the house the Airedale would attempt to go through the screen door after it.

The evidence further shows that the Airedale in question was owned by one of defendants' daughters; that plaintiff owned a small Fox Terrier for which the Airedale had a particular aversion. Plaintiff testified that the Airedale would pursue plaintiff's dog upon her porch and when her dog was taken into the house the Airedale would attempt to go through the screen after her dog; that the Airedale dog jumped upon her daughter at one time when her daughter had plaintiff's dog in her arms. Plaintiff further testified that the Airedale would rush upon her porch and "act as though we were going to be eaten up;" that this occurred "especially if the dog (plaintiff's) was there;" that the Airedale had caused so much trouble around her house that she and her family kept a golf club on the porch to "beat him off with when he came up on the porch;" that whenever she saw the dog coming she was afraid that it would attack some member of her family; that she was afraid of the dog; that she feared to do anything to it and was so terrorized by it that

when it would come upon the porch she would try to get away from it.

Plaintiff further testified that on the evening of Sunday, August 26, 1923, she was sitting alone on her front porch with her dog; that defendants came along the sidewalk in front of the premises, accompanied by the Airedale; that the "Airedale came tearing up the terrace," which was about five feet higher than the sidewalk; that her dog "went off the steps of the porch" and "engaged in a very severe fight" with the Airedale; that the dogs were fighting about seven feet from the front porch; that there were four or five steps which extended out from the porch about three feet; that the Airedale had plaintiff's dog on the ground under his feet and was "chewing upon his neck." She testified that she stood on the top step and called to her dog to "come here" and then went down the steps onto the ground continuing to call her dog by name; that when she reached a point off of the sidewalk on the ground not nearer than three or four feet of where the dogs were fighting, she was standing facing the dogs and calling her dog, whereupon the Airedale turned and jumped on her and bit her on the arm; that when the Airedale jumped at her he almost knocked her down; that she would not think of going any nearer the dogs because the Airedale "had jumped on me and jumped on my daughter." That either immediately before or immediately after the Airedale bit her, her dog "went up to the porch and the Airedale dog after he bit me went on."

Plaintiff further testified that she was a little over five feet in height and that the place on her arm where she was bitten was at least four and one-half feet above the ground; that the Airedale "bit me on the front. I was standing facing the dog;" that while she was not standing erect she was not stooping over; that she did not attempt to separate the dogs except that she thought by calling her dog he would come to her and "I would put him in the house as I have done before many times;" that she did not touch either dog; that she did not have the club with her and did not "sick" her dog on the Airedale dog. Plaintiff further testified that neither of the defendants, who were about twenty-five feet away on the public sidewalk, said anything prior to the time the Airedale bit her arm.

Defendants' evidence tended to show that the Airedale was a kind and gentle dog; that it had not manifested any vicious traits; that it was a neighborhood pet and would play with other dogs, children and even babies and did not molest cats and chickens of a neighbor when the dog was about them; that the defendant, Leon Rosenwald, warned plaintiff not to interfere in the dog fight but plaintiff—

"  .  .  . mixed in with the dogs, rescued her dog, took it in her arms and into the house."

Defendants insist that plaintiff's evidence shows that she was guilty of contributory negligence as a matter of law and that their demurrer to the evidence should have been sustained. In this connection defendants argue that plaintiff knew of the vicious traits of the dog; that it would come up on her porch and jump at or upon her and members of her family, especially if her dog was present; that she had seen her daughter attacked by the Airedale when the daughter picked up plaintiff's dog; that plaintiff testified that she was afraid to do anything to the dog and tried to get away from it. It is pointed out that when the dog fight started plaintiff was upon her porch, which was four steps higher than the yard and where she could have remained with safety; that she had a weapon that she could have used and did not take it with her when she descended from the porch to come nearer the dogs. It is claimed that under the circumstances she was clearly negligent in calling her dog; that she "well knew that calling her own dog to her was tantamount to calling the dog that had its teeth in her dog's neck, to her for she knew the one would follow the other."

The law in reference to the point now before us is stated by Corpus Juris as follows:

"Where the foundation of liability for injuries by animals is deemed to be negligence, the ordinary doctrine of contributory negligence as a defense applies. Where, however, negligence in the ordinary sense is not the ground of liability, contributory negligence, in the sense in which the term is ordinarily used, is not a good defense, but acts must be proved, with notice of the character of the animal, which will establish that the injured person voluntarily brought the injury upon himself. The cases all agree, however, that if a person with knowledge of the evil propensities of a vicious dog wantonly excites, or voluntarily and unnecessarily puts himself in the way of such an animal, he will be adjudged to have brought the injury upon himself, and will not be entitled to recover, either at common law or under the statutes. But provocation by another is no defense." [3 C. J., pp. 108, 109.]

In Missouri a cause of action based upon the harboring or keeping of a vicious dog is not grounded upon negligence. [Speckmann v. King, 79 Mo. App. 376; O'Neill v. Blase, 94 Mo. App. 648; Clinkenbeard v. Reinert, 284 Mo. 569.] The gist of the action is the keeping of a vicious dog after knowledge of his vicious propensities. [Clinkenbeard v. Reinert, supra, l. c. 578.] The action is founded upon the theory of maintenance of a nuisance rather than upon negligence. However, where the facts show that a person injured by a vicious dog voluntarily and unnecessarily placed himself in the way of such dog, it cannot be said that the keeping or harboring of the dog produced the injury. [Muller v. McKesson, 73 N. Y. 195, 201.]

Defendants seem to be laboring under the impression that anyone who attempts to part two dogs while they are in the heat of a fight is guilty of contributory negligence as a matter of law. This is not true in all cases. In Raymond v. Hodgson, 161 Mass. 184, 185, the court said:

"We have no doubt that where the plaintiff incites or interfere.; with a dog, and is bitten, his due care must be shown; and that the same is true where he interferes with two dogs that are fighting. How far the circumstances may warrant his interference will be for the jury to say." [See, also, Warrick v. Farley, 51 L. A. R. (N. S.) 45, 50, 145 N. W. (Nebr.) 120.] The Warrick case is cited by the defendants but we find that in that case plaintiff took two fighting dogs by their collars and was holding them "up in front of him." The dogs were either being held off of the ground or were standing on their hind legs; they were snapping at each other. The court, 1. c. 49, said—

"Holding them in that manner they would be sure to snap each other. From the circumstances as detailed no one may be certain that the bite which plaintiff received was not intended for the coach dog."

It was held that under these circumstances plaintiff was guilty of contributory negligence as a matter of law. Of course, the facts in that case are not like those in the case at bar; neither are they like those in the other cases cited by the defendants.

In this case defendants are mistaken in contending in effect that the Airedale followed plaintiff's dog when she called the latter to her. There is no evidence of this, and even if there had been, if it could be said, as a matter of law, that she could have known that when she called her dog and it came that the Airedale would follow it, it could not be said as a matter of law that plaintiff should have anticipated that the Airedale in the heat of the fight would hesitate in his pursuit of the other dog long enough to jump upon and bite plaintiff. This would have been a very unusual act for any dog in the same situation. However, according to plaintiff's evidence the Airedale during the fight left her dog in order to bite her, four feet distant. This, we think, also, was very unusual under the circumstances, and we cannot say as a matter of law that plaintiff in going within four feet of the fighting dogs and calling her dog under the circumstances when she did nothing further to separate the dogs, was guilty of contributory negligence as a matter of law. Neither would this court be justified in saying that under all the circumstances plaintiff should have anticipated that the Airedale would have bitten her. The whole question of plaintiff's injuries was clearly one for the jury.

Complaint is made of plaintiff's instruction A and C, which read as follows:

"A. The court instructs the jury that if you believe and find from the evidence that on and prior to the 26th day of August, 1923, the defendants or either of them owned, kept or harbored a dog of vicious propensities, that was disposed to bite or attack or injure a person, and if you further find and believe from the evidence that the defendants or either of them knew, or by the exercise of ordinary care and caution could have known of the vicious propensity of such dog, within a reasonable time prior to August 26, 1923, and that on or about the 26th day of August, 1923, the dog, so owned, kept or harbored by the defendants, without provocation, did attack the plaintiff upon her own premises, biting her upon the right arm, between the shoulder and elbow, and that plaintiff was thereby injured and damaged, then your verdict will be for the plaintiff."

"C. The court instructs the jury that in order to find for the plaintiff under plaintiff's instruction No. 1, it is not necessary for the jury to believe that defendants or either of them were the actual owners of the dog in question, but, if you believe and find from the evidence that defendants or either of them knowingly kept or harbored the dog about their premises, then it makes no difference in this case whether defendants or either of them was the owner of the dog or not."

We think that defendants' criticism of these instructions is well taken. This criticism, in the words of defendants, is as follows:

"The defect in the above instruction(s) lies in the fact that the jury might have believed (1) that both defendants kept the dog but only Mrs. Rosenwald knew of his viciousness, in which event verdict should have been against her only; (2) that both kept the dog and only *he* knew of the vicious propensity, in which event verdict against him only should have been rendered; (3) that he kept the dog and she did not, in which event she could not be held; (4) that she kept the dog and he did not in which event he could not be held; (5) that he (or she) did not keep the dog or know of its viciousness, in which event only one of them would be liable."

Plaintiff claims that these instructions permitted the jury to find for one defendant and against the other if they found that the facts hypothesized in these instructions applied to the one and not to the other. Clearly there is no merit in this contention. There were no other instructions explaining these in respect to the points made against them and, to say the least, the first of these instructions is misleading upon the question before us and the jury under them returned a verdict against both defendants.

It is claimed that defendant's instructions cured these instructions of plaintiff, but it is not pointed out in what manner they accomplished

this effect and we are unable from an examination of them to find how they could have cured plaintiff's instructions in this respect. We have examined the cases of Merritt v. Matchett, 135 Mo. App. 176, Clinkenbeard v. Reinert, supra, and Carrow v. Haney, 203 Mo. App. 485, and find that they do not pass upon the points now raised against plaintiff's said instructions.

It is further contended by defendants to the effect that these instructions were erroneous because defendant, Sadie Rosenwald, was not liable under the facts shown in evidence. However, there was no separate demurrer offered on behalf of this defendant and she having joined with plaintiff in submitting to the jury her liability, is not in a position to urge this point. However, no doubt this question will be properly presented to the trial court at another trial, and it is not improper for us to pass upon the question now. The petition in this case is peculiarly worded and only escapes critical examination on our part by reason of the fact that the parties agree that it is based upon the act of defendants in keeping and harboring a dog known to them to be vicious. In discussing the petition, plaintiff states—

"The gist of his case is not the negligence in permitting the dog to run at large, but in keeping the dog at all when the defendants had knowledge or are charged with knowledge of its vicious propensities."

There is no evidence as to who owned the premises where the dog was kept. There is no testimony tending to show that either of the defendants took any active part in the dog fight; their conduct was merely passive according to the testimony on both sides, except that defendants' evidence tended to show that defendant, Leon Rosenwald, warned plaintiff not to interfere in the fight. But whether defendant, Sadie Rosenwald, was guilty of any negligence at the time of the fight, she is not liable, under the testimony as it appeared at this trial, for the act of the Airedale, which belonged to defendants' daughter, in biting plaintiff. [Charlton v. Jackson, 193 Mo. App. 613; Carrow v. Haney, supra, 1. c. 493, 494; Holmes v. Murray, 207 Mo. 413; Adams v. Brown, 140 Mo. App. 434, 436; Jacobsmeyer v. Poggemoeller, 47 Mo. App. 560; 3 C. J. 106, 107.]

Plaintiff's instruction E is erroneous. This instruction submits as an element of recovery "the fear and anxiety of a fatal result caused" by the biting of plaintiff. There is not only no evidence of fear of a fatal result on the part of plaintiff, but the instruction assumed as a fact that there was such fear.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.