STATE of Missouri ex rel. the KROGER. COMPANY, a corporation, Relator,

v.

Hon. Marshall CRAIG, Judge of the Circuit Court of Mississippi County, Missouri, Respondent.

No. 7792.

Springfield Court of Appeals.

Missouri.

Dec. 3, 1959.

Henson & Henson, Poplar Bluff, for relator.

Ward & Reeves, Caruthersville, for respondent.

STONE, Presiding Judge.

This original proceeding in prohibition is an outgrowth of a civil action (hereinafter referred to as the damage suit) styled Joan Lee Lawrence, a minor, by Al Lawrence, her father and natural guardian, plaintiff vs. The Kroger Company, a corporation, defendant, in which plaintiff (as disclosed by her petition) prays $3,000 for personal injuries alleged to have resulted when she was bitten by "a tan mongrel dog" while "an invitee" in a Kroger market in Caruthersville. The owner of the dog is not identified. In this proceeding, The Kroger Company seeks to prohibit respondent, as judge of the Circuit Court of Mississippi County (before whom the damage suit is

now pending), from enforcing an order directing Kroger to answer certain interrogatories propounded by counsel for plaintiff Joan in the damage suit. Since our preliminary writ of prohibition was limited to interrogatories 6, 7, 8 and 16 (copied marginally [1]), we presently address ourselves to those interrogatories only.

Although the trend of modern practice is to enlarge the scope of discovery and our civil code of 1945 was conceived in that spirit (State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 1099, 219 S.W.2d 383, 390, 8 A.L.R.2d 1124), nevertheless the discovery provisions in our code were not designed or intended for untrammeled use as a factual dragnet or for unlimited employment in far-flung fishing expeditions.[2] Soon after the effective date of our present civil code, it was pointed out and settled by

our Supreme Court, en banc, that the scope of examination on interrogatories under Section 510.020 RSMo 1949, V.A.M.S., is coextensive with that permitted on depositions and that discovery of matters inadmissible in evidence is not authorized, even though such matters might aid the inquiring party in preparing for trial.[3] So, numerous cases evidence the fact that, in simple recognition and practical application of the foregoing principle, courts should not compel interrogatories to be answered or documents to be produced where it is apparent that the answers or the documents would constitute or be predicated upon inadmissible hearsay.[4] Since any information elicited in response to instant interrogatory 6 obviously would be rank, undisguised, unadulterated hearsay, that interrogatory was improper and an answer thereto should not be compelled.

1. "6. Was any employee or any person on behalf of defendant notified that plaintiff was bitten by a dog while present upon defendant's premises on or about October 26, 1957? If so, state the name and address of such person receiving such report, by whom it was made, and the substance of such report and the time it was made.

"7. Did any employee or any person on behalf of defendant make any written reports and memoranda to defendant concerning the plaintiff's dog bite? If so, state the name and address of the person making such report, the name and address of the person who now has possession and custody of such report, and attach a written copy of such report.

"8. Prior to October 26, 1957, did any employee of defendant have knowledge that dogs were present on the same premises of defendant on any occasion? If so, state the name and present address of such person having such knowledge, the number of times the dogs were observed on the premises and the respective dates.

"16. Is defendant subject to supervision or regulation by any governmental agency or body concerning the health and safety requirements in the conduct of the retail grocery business? If so, state the name of such governmental agency or body and attach a copy of its regulations."

2. State ex rel. Bostelmann v. Aronson,

361 Mo. 535, 546, 548, 235 S.W.2d 384, 389, 391(9); State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 1093, 1098, 219 S.W.2d 383, 386(3), 390, 8 A.L.R.2d 1124. See also State ex rel. Clemens v. Witthaus, 360 Mo. 274, 284, 228 S.W. 2d 4, 10; State ex rel. Burke v. Scott, 364 Mo. 420, 431, 262 S.W.2d 614, 619.

3. State ex rel. Williams v. Buzard, 354 Mo. 719, 725, 190 S.W.2d 907, 910; State ex rel. Thompson v. Harris, 355 Mo. 176, 180, 195 S.W.2d 645, 647–648(9), 166 A.L.R. 1425. And, see Johnson v. Cox, Mo., 262 S.W.2d 13, 17; Belding v. St. Louis Public Service Co., 358 Mo. 491, 503, 215 S.W.2d 506, 513–514. Consult also State ex rel. Chicago, R. I. & P. R. Co. v. Riederer, Mo. (banc), 303 S.W.2d 71, 73(1).

4. State ex rel. Williams v. Buzard, supra, 354 Mo. loc. cit. 726, 190 S.W.2d loc. cit. 910; State ex rel. Thompson v. Harris, supra, 355 Mo. loc. cit. 180, 195 S.W. 2d loc. cit. 648; State ex rel. Kansas City Public Service Co. v. Cowan, 356 Mo. 674, 681, 203 S.W.2d 407, 410–411 (9); State ex rel. Miller's Mut. Fire Ins. Ass'n v. Caruthers, 360 Mo. 8, 11–12, 226 S.W.2d 711, 713(2); State ex rel. Land Clearance for Redevelopment Authority of Kansas City v. Southern, Mo.App., 284 S.W.2d 893, 897. See also Davis v. Illinois Terminal R. Co., Mo., 291 S.W.2d 891, 899(9); Johnson v. Cox, supra, 262 S.W.2d loc. cit. 17.

■ Interrogatory 7, calling for "any written reports and memoranda to defendant (Kroger)" by "any employee or any person on behalf of defendant," would encompass not only inadmissible reports reflecting or necessarily predicated upon hearsay but also all narrative reports by employees or claim representatives of Kroger subsequent to the alleged occurrence in suit and all intracompany memoranda pertaining to investigation of the damage suit or preparation for its defense, none of which would be competent evidence in the damage suit upon plaintiff Joan's theory that such reports and memoranda "would constitute admissions against interest" on the part of defendant Kroger. For, " 'declarations' or admissions 'of an agent with respect to an act or transaction, made after the occurrence of the act or the completion of the transaction, are not provable against the principal. * * * Such statements are merely hearsay and like those of any other person, and cannot affect his principal. A rule that would allow an agent, after a transaction is closed, to admit away the rights of his principal, would be too dangerous to be tolerated.' " [5] Only declarations or statements made by an employee or agent "in the course of, relating to, and connected with the ordinary business of the principal, within the scope of his authority, and then depending, are excepted from the hearsay rule and competent as admissions against his principal." Shelton v. Wolf Cheese Co., 338 Mo. 1129, 1139, 93 S.W.2d 947, 953(5); State ex rel. S. S. Kresge Co. v. Shain, 340 Mo. 145, 153, 101 S.W.2d 14, 18. And, the firmly-established converse is that a mere narrative of the facts and circumstances surrounding an accident, made by an employee long after the accident, will not be received in evidence as an admission against interest on the part of the employer.[6] Thus, interrogatory 7 is improper in that it would require production of narratives by Kroger's employees subsequent to the alleged dog bite, and it is just as improper in that it would compel disclosure of intracompany reports and memoranda pertaining to investigation and preparation for defense of the damage suit.[7]

■ The omnibus language of interrogatory 8, demanding the "knowledge" of "any employee" of defendant Kroger concerning the presence of any dogs on Kroger's premises "on any occasion" during the entire period of the operation of this market prior to the occurrence in suit, is much too broad and all-inclusive [8] and would afford adequate reason, in and of itself, to re-

5. Shelton v. Wolf Cheese Co., 338 Mo. 1129, 1138, 93 S.W.2d 947, 952(3); Mattan v. Hoover Co., 350 Mo. 506, 520, 166 S.W.2d 557, 566(11); Davis v. Sedalia Yellow Cab Co., Mo.App., 280 S.W.2d 869, 871; Winegar v. Chicago, B. & Q. R. Co., Mo.App., 163 S.W.2d 357, 367. See also Roush v. Alkire Truck Lines, Mo., 299 S.W.2d 518, 521.

6. State ex rel. S. S. Kresge Co. v. Shain, 340 Mo. 145, 152–153, 101 S.W.2d 14, 17–18(2); Shelton v. Wolf Cheese Co., supra, 338 Mo. loc. cit. 1139, 93 S.W.2d loc. cit. 953(6); Chawkley v. Wabash Ry. Co., 317 Mo. 782, 801, 297 S.W. 20, 26(10); St. Charles Sav. Bank v. Denker, 275 Mo. 607, 615, 205 S.W. 208, 210(1); Voyles v. Columbia Terminals Co., Mo.App., 239 S.W.2d 559, 562(5); Lemen v. Kansas City Southern Ry. Co., 151 Mo.App. 511, 514–515, 132 S.W. 13,

14(2); 31 C.J.S. Evidence § 346, p. 1120; 20 Am.Jur., Evidence, § 599, p. 510.

7. State ex rel. Terminal R. Ass'n of St. Louis v. Flynn, 363 Mo. 1065, 1072–1075, 257 S.W.2d 69, 73–75; State ex rel. Miller's Mut. Fire Ins. Ass'n v. Caruthers, supra, 360 Mo. loc. cit. 12, 226 S.W.2d loc cit. 713. And, see particularly Snyder v. Atchison, T. & S. F. Ry. Co., D.C. Mo., 7 F.R.D. 738, 739(4).

8. Compare State ex rel. Bostelmann v. Aronson, supra, 361 Mo. loc. cit. 545, 235 S.W.2d loc. cit. 389; State ex rel. Clemens v. Witthaus, supra, 360 Mo. loc. cit. 283–284, 228 S.W.2d loc. cit. 9–10; State ex rel. Cummings v. Witthaus, 358 Mo. loc. cit. 1098, 219 S.W.2d loc. cit. 390; State ex rel. Kramer v. Carroll, Mo. App., 309 S.W.2d 654, 657(4, 5). See also State ex rel. Burke v. Scott, supra, 364 Mo. loc. cit. 429–431, 262 S.W.2d loc. cit. 618–619.

quire condemnation of this interrogatory. But, the effort of counsel for plaintiff Joan to justify interrogatory 8 on the theory that "knowledge of the presence of dogs upon the premises of the defendant on previous occasions is an essential element of plaintiff's cause of action" suggests the propriety of our exploration of the nature and gist of such cause of action, that we may determine whether information of the character sought by this interrogatory (and by others to be scrutinized herein and in a companion proceeding) would be material and relevant to the issues in the damage suit. Consult State ex rel. Clemens v. Witthaus, 360 Mo. 274, 280, 282, 228 S.W.2d 4, 7, 9(9).

Seized by *furor scribendi* with which appellate judges sometimes are afflicted, we observe preliminarily that, although plaintiff Joan's petition depreciatingly and disparagingly refers to the animal alleged to have bitten her as "a tan mongrel dog," the canine (as a class) has a proud heritage rooted in antiquity. To the ancients, the dog was more than a pet in the household, a servant in the field, and an assistant in the hunt. He was an object of ceremony, reverence and veneration as well. The Egyptians regarded him as a symbolic guide and protector of the dead, crowned their god Anubis with a doglike head, fashioned images of the dog on the walls of their burial chambers and temples, ceremoniously embalmed his body and entombed it in the special burial ground set aside for dogs in every town, and even built a city, Cynopolis, in his honor. The dog was scarcely less important to the Greeks, where Socrates' favorite pledge was by the dog, Plato called the dog a philosopher, Pythagoras taught that a dog should be held to the mouth of a dying man as the animal most worthy of receiving the departing spirit and perpetuating its virtues, and in Greek mythology the dog of the hunter Orion was transformed into Sirius, the brightest star in the heavens, whose rise marked the Athenian New Year. Ethiopian tribesmen once crowned a dog as their king; and, with the ancient Persians, it was a less grievous offense to kill a man than to destroy a dog. In Rome, dogs became so popular that Julius Caesar is said to have mused aloud that Roman ladies of luxury had decided to have dogs instead of children; and, Cicero said, in tribute to dogs, that "such fidelity of dogs in protecting what is committed to their charge, such affectionate attachment to their masters, such jealousy of strangers, such incredible acuteness of nose in following a track, such keenness in hunting—what else do they evince but that these animals were created for the use of man." Centuries later, Olway the poet wrote of dogs as "honest creatures (who) ne'er betray their masters, never fawn on any they love not." And, in his classic encomium to the dog triumphantly climaxing the celebrated suit for the loss of "Old Drum," Missouri's Senator George Graham Vest eulogized the fierce loyalty, unswerving devotion and unwavering steadfastness of the dog—noble qualities perhaps the more highly esteemed by man because he is so often found wanting in them himself.

Since, down through the ages, the dog has earned and has merited acceptance as man's best friend, small wonder then that the law long ago recognized dogs as ordinarily harmless and classified them as animals domitae naturae, i. e., domestic animals, rather than as animals ferae naturae, i. e., wild animals,[9] and that, in an action against the owner or harborer of a dog for injury inflicted by such animal, defendant's scienter (i. e., actual or constructive knowledge) of the vicious or dangerous propensities of the dog became and still is (except where removed by statute) an essential element of the cause of action

---

9. Merritt v. Matchett, 135 Mo.App. 176, 183, 115 S.W. 1066, 1068; Splaine v. Eastern Dog Club, 306 Mass. 381, 28 N.E.2d 450, 452(4), 129 A.L.R. 427; 2 Am.Jur., Animals, § 4, loc. cit. 692; Restatement of the Law of Torts, Vol. 3, § 518, comment j, loc. cit. 40.

and a necessary prerequisite to recovery,[10] even as liability for injury by cattle has, since the days of Moses, depended upon proof that "the ox were wont to push with his horn in time past, and it hath been testified to his owner." Exodus 21:29. See Alexander v. Crotchett, 233 Mo.App. 674, 683, 124 S.W.2d 534, 537(3); Maisch v. Kansas City Stock Yards Co. of Maine, Mo.App., 241 S.W.2d 487, 491(6). As our Missouri courts have put it bluntly and succinctly in dog bite cases, "the gist of the action is the keeping of a vicious dog after knowledge of his vicious propensities." Clinkenbeard v. Reinert, 284 Mo. 569, 578, 225 S.W. 667, 669, 13 A.L.R. 485; Patterson v. Rosenwald, 222 Mo.App. 973, 976, 6 S.W.2d 664, 666. See also Burke v. Fischer, 298 Ky. 157, 182 S.W.2d 638, 640; 2 Am. Jur., Animals, § 48, p. 728; Ibid., § 49, p. 731; annotation 17 A.L.R.2d 459, 460. So, the gist of plaintiff Joan's pleaded cause of action is defendant Kroger's admittance of, or failure to eject, *the dog alleged to have bitten Joan* after Kroger knew, or in the exercise of ordinary care could and should have known, of the vicious or dangerous propensities of *that dog*,[11] and Kroger's knowledge (if so) of the presence of *other dogs* upon its premises at other times would be neither "an essential element of plaintiff's cause of action" (as her counsel mistakenly assert) nor relevant to the issues in the damage suit. For this basic reason, interrogatory 8 improperly sought information without the fair periphery of discovery permitted under Section 510.020 RSMo 1949, V.A.M.S. See cases cited in footnote 3, supra.

 To comply with interrogatory 16, defendant Kroger would be compelled, after painstakingly seining the seven seas of legislative enactments and administrative regulations, to reach and express a legal opinion and conclusion as to what (if any) enactments and regulations subject Kroger "to supervision or regulation by any governmental agency or body (either federal or state) concerning the health and safety requirements in the conduct of the retail grocery business," and then to present counsel for plaintiff Joan with a copy of all such regulations deemed applicable to Kroger. As we read the cases, this would not be proper and permissible even in the more liberal discovery practice under the Federal Rules of Civil Procedure, 28 U.S.C.A., where the general rule seems to be that the interrogated party should be compelled to answer only as to matters of fact within his knowledge and should not be required to express opinions or to engage in research and compilation of data and information not readily known to him.[12] Certainly,

10. Every reported Missouri case for personal injury by a dog has so recognized. See Clinkenbeard v. Reinert, 284 Mo. 569, 225 S.W. 667, 13 A.L.R. 485; Patterson v. Rosenwald, 222 Mo.App. 973, 6 S.W.2d 664; Gallagher v. Kroger Grocery & Baking Co., Mo.App., 272 S.W. 1005; Brune v. DeBenedetty, Mo.App., 261 S.W. 930; Carrow v. Haney, 203 Mo.App. 485, 219 S.W. 710; Merritt v. Matchett, supra; Speckmann v. Kreig, 79 Mo.App. 376. For representative holdings from other jurisdictions, see Kennett v. Engle, 105 Mich. 693, 63 N.W. 1009; Gerulis v. Lunecki, 284 Ill.App. 44, 1 N.E.2d 440; Burke v. Fischer, 298 Ky. 157, 182 S.W.2d 638; Thomas v. Pecoraro, La.App., 164 So. 435; Anderson v. D'Ingianni, 16 La.App. 560, 134 So. 412; Gardner v. H. C. Bohack Co., 179 App.Div. 242, 166 N.Y.S. 476; Trumble v. Happy, 114 Iowa 624, 87 N.W. 678, 680(9); Kansas City Southern Ry. Co. v. Pinson, 5 Cir., 61 F.2d 1001.

11. Gallagher v. Kroger Grocery & Baking Co., supra, 272 S.W. loc. cit. 1006; Andrews v. Jordan Marsh Co., 283 Mass. 158, 186 N.E. 71, 72(2), 92 A.L.R. 726, 729; Goodwin v. E. B. Nelson Grocery Co., 239 Mass. 232, 132 N.E. 51, 53(7); Pally v. F. W. Woolworth & Co., 194 Misc. 211, 88 N.Y.S.2d 378, 380; Marsalis v. LaSalle, La.App., 94 So.2d 120, 123–124(2–4); Pallman v. Great Atlantic & Pacific Tea Co., 117 Conn. 667, 167 A. 733; 2 Am.Jur., Animals, § 65, p. 742; annotation 17 A.L.R.2d 459, 464 (§§ 6, 8).

12 Snyder v. Atchison, T. & S. F. Ry. Co., D.C.Mo., 7 F.R.D. 738(3); Cinema Amusements, Inc. v. Loew's, Inc., D.C.

the discovery provisions of our code confer no license for interrogatories compelling the interrogated party to state legal opinions or conclusions [13] or to ferret out and cite to his adversary case law or regulatory authority. Compare Fishermen & Merchants Bank v. Burin, D.C.Cal., 11 F.R.D. 142, 145. Furthermore, Judge Holtzoff, an eminent authority on the Federal Rules, appropriately cautioned in Aktiebolaget Vargos v. Clark, D.C.D.C., 8 F.R.D. 635, 636(4), " * * interrogatories are not to be used in an oppressive manner. An adverse party should not be required to perform burdensome labors or to execute difficult and expensive tasks, in searching for facts and classifying and compiling data. *A litigant may not compel his adversary to go to work for him.*" (Emphasis ours) To the same effect, see Onofrio v. American Beauty Macaroni Co., D.C.Mo., 11 F.R.D. 181, 184; Riss & Co., Inc. v. Association of American Railroads, D.C.D.C., 23 F.R.D. 211, 212(1). It would appear also, from our consideration (in connection with interrogatory 8) of the essential issues in the damage suit, that whatever might be elicited by interrogatory 16 would not be relevant and admissible upon trial of the cause of action pleaded by plaintiff Joan; but, wholly aside from that, we think it sufficiently clear from the foregoing that defendant Kroger should not be harnessed with this interrogatory.

Our preliminary writ of prohibition as to interrogatories 6, 7, 8 and 16 is made permanent.

McDOWELL and RUARK, JJ., concur.

Del., 7 F.R.D. 318, 321(5); Walling v. Parry, D.C.Pa., 6 F.R.D. 554, 555(1); Hercules Powder Co. v. Rohm & Haas Co., D.C.Del., 3 F.R.D. 328, 329(1); Chemical Foundation, Inc. v. Universal-Cyclops Steel Corp., D.C.Pa., 1 F.R.D. 533, 535, 536(2); Coca-Cola Co. v. Dixi-Cola Laboratories, Inc., D.C.Md., 30 F. Supp. 275, 278(4).

13. Compare Richards v. Maine Central

Railroad, D.C.Me., 21 F.R.D. 590, 592 (3); Tobacco and Allied Stocks, Inc. v. Transamerica Corp., D.C.Del., 16 F.R.D. 537, 541–543(8, 9); Colorado Milling & Elevator Co. v. American Cyanamid Co., D.C.Mo., 11 F.R.D. 580, 582; Onofrio v. American Beauty Macaroni Co., D.C.Mo., 11 F.R.D. 181, 184(2, 3); United States v. Columbia Steel Co., D.C.Del., 7 F.R.D. 183, 185; Byers Theaters, Inc. v. Murphy, D.C.Va., 1 F.R.D. 286, 289(8).