Jesse BUSSELL b/n/f Mary Bussell and Mary Bussell Individually, Appellant,

v.

TRI–COUNTY HUMANE SOCIETY, Delores Tinsley, Zane and Mary Scott, and Kennett and Delia McGuire, Respondents.

No. ED 78090.

Missouri Court of Appeals, Eastern District, Division Three.

June 29, 2001.

Lee R. Elliott, Troy, MO, for Appellant.

Brent J. Burtin, St. Louis, MO, Reginald P. Bodeux, St. Charles, MO, for Respondents.

DRAPER, Judge.

This appeal arises from a dog attack. Jesse Bussell, a minor child, and his mother, Mary Bussell, (hereinafter and collectively, "Bussell") brought suit against the former owners of the dog that bit him, a woman whom he alleged harbored the dog, and the humane society that placed the dog in an adoptive home. The trial court granted summary judgment in favor of the former owners and the woman. Bussell appeals.

Zane and Mary Scott (hereinafter, and collectively, "Scott") acquired two Dalmatian dogs in April 1994. Later that month, the young male Dalmatian (hereinafter, "Samson") bit Scott's neighbor-child.[1] Samson was quarantined. After being released from quarantine, Scott moved Samson to live on a farm while trying to find another owner for Samson. Delores Tinsley (hereinafter, "Tinsley") contacted the Tri County Humane Society (hereinafter, "Humane Society") regarding its procedures for accepting an animal, and Scott placed an advertisement in a newspaper attempting to give Samson away. Humane Society accepted Samson and placed him with another owner. Subsequently, on May 31, 1994, Samson bit Bussell, the neighbor-child of Samson's new owner.

Bussell brought this action against Scott, Tinsley, and Humane Society alleging that as the prior custodians of Samson, each failed to give adequate warning of Samson's history and vicious propensities to the successor owner. Scott and Tinsley filed motions to dismiss for failure to state a claim and supporting exhibits. Pursuant to Rule 55.27(a), their motions were treated as motions for summary judgment. The trial court granted summary judgment in favor of Scott and Tinsley and

---

1.  The female Dalmatian is not at issue in this appeal.

designated its judgment as final for the purposes of appeal. Bussell appeals.

In review of summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid–America Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* Additionally, the non-movant is accorded the benefit of all reasonable inferences from the record. *Id.*

The grant or denial of a summary judgment motion by the trial court is based upon the information contained in the motion for summary judgment and the responses thereto. Rule 74.04(c)(3). Motions for and responses to summary judgment motions shall state material facts with specificity as to where they appear in pleadings, discovery, or affidavits, in asserting either the existence or non-existence of a genuine issue. Rule 74.04(c)(1–2). Upon the initial determination of the propriety of the motion the trial court is limited in its review, likewise, this Court is "confined to considering the same information that the trial court considered in rendering its decision on the motion for summary judgment." *Mothershead v. Greenbriar Country Club, Inc.,* 994 S.W.2d 80, 85 (Mo.App. E.D. 1999).

Summary judgment will be granted as a matter of law to the moving party when there is no genuine issue as to any material fact. Rule 74.04(c)(3). The moving party bears the burden of establishing a right to judgment as a matter of law. Following the moving party's prima facie showing for summary judgment, the motion will be granted if the responding party fails to reply with specific facts showing a genuine issue of material fact exists for trial. Rule 74.04(e).

■ Bussell raises two points on appeal, claiming the trial court erred: (1) in granting summary judgment in favor of Scott because Scott owed a duty to the public to protect it from Samson, and there were genuine issues of material fact regarding the transfer of Samson's ownership; and (2) in granting summary judgment in favor of Tinsley because there were genuine issues of material fact regarding whether she acted as an agent of Scott and whether she made misrepresentations of fact as to Samson's nature.[2]

■ Under Missouri law, a dog owner is liable for injuries the dog inflicts only if the owner harbors the dog with actual or constructive knowledge that the dog has vicious or dangerous propensities. *Crimmins v. Mirly,* 675 S.W.2d 663, 664 (Mo. App. E.D.1984). In order to establish a submissible case, it must be demonstrated that: (1) the dog has vicious or dangerous propensities, and (2) the owners had knowledge of such propensities. *Id.*

In a dog bite case the line of demarcation between submissibility and nonsubmissibility is a fuzzy one. It involves a reasonable accommodation of the right of persons to be free from the risk of exposure to animals known to be vicious and the right of dog owners to have

---

2. When drafting points on appeal, we remind the parties to comply with Rule 84.04(d) and *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978). Compliance with Rule 84.04 "is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made." *Myrick v. Eastern Broad., Inc.,* 970 S.W.2d 885, 886 (Mo.App. S.D.1998). Failure to comply with these requirements can result in dismissal of the appeal. Rule 84.04(d)(1).

some degree of freedom in the possession and enjoyment of their canine pets. *Frazier,* 515 S.W.2d at 772.

■ A single prior bite does not confirm that a dog has vicious propensities without an examination of the surrounding circumstances. *Frazier,* 515 S.W.2d at 768. "Barking, running loose, jumping, and lunging are activities in which all dogs engage and, absent further showing, do not alone justify a finding of vicious propensities." *Id.* at 769. The mere fact that a dog may be trained to be a watch dog does not establish that the dog has vicious propensities to injure people. *Id.* at 772; *Boosman v. Moudy,* 488 S.W.2d 917, 921 (Mo.App.1972).

In *Crimmins,* there was evidence that an owner knew of the dog chasing children riding bicycles while barking and snapping at their legs. *Crimmins,* 675 S.W.2d at 664. This failed to rise to the level of the dog demonstrating a vicious propensity. *Id.* For recovery on a dog bite not only must the animal have vicious propensities toward humans, but the owner must know about them before the animal causes any injury. *Id.* When owners have knowledge of the vicious propensities of their dog, it is their "absolute duty, for the protection of the public, to either kill or safely restrain their dog." *Clinkenbeard v. Reinert,* 284 Mo. 569, 225 S.W. 667, 670 (1920).

■ Bussell claims that Scott owes a duty to the public to protect it from the animal in that it had previously attacked a child under circumstances demonstrating its vicious nature. Additionally, Bussell states that there were genuine issues of material fact whether placing an anonymous ad and in transferring ownership of Samson to Humane Society constituted an adequate discharge of Scott's duty. We disagree.

Following Samson's bite of Scott's neighbor, Samson was quarantined and then taken to a farm to live; thereby, removing Samson from public access. The record does not reflect the surrounding circumstances of that bite. It is clear that Samson bit Scott's neighbor-child. Yet, absent any surrounding circumstances, it is not possible to determine whether Samson demonstrated vicious propensities which would trigger Scott's duty to protect the public. *Frazier,* 515 S.W.2d at 769; *Clinkenbeard,* 225 S.W. at 670. Without owing a duty to the public, Scott transferred ownership of Samson to Humane Society. Scott informed Humane Society that Samson had bit a child. Acting upon this information, Humane Society observed Samson, kept records of his behavior, and thrice, according to the record before this Court, informed his adoptive family that there was a prior bite of another child. Since there is no indication on the record that Samson's bite was one which would trigger Scott's liability for subsequent bites, Scott owed no duty to the public regarding Samson's future actions. Point denied.

■ Bussell also claims that there are genuine issues of material fact as to whether Tinsley was an agent of Scott. Further, Bussell claims that Tinsley misrepresented Samson's dangerous nature with a deliberate or negligent disregard of the truth in order to have the dogs placed with Humane Society. We disagree.

Tinsley stated in her affidavit that Scott asked her to call Humane Society to see whether Humane Society would accept the dogs and to inquire as to Humane Society's hours of operation. She neither owned nor harbored the dogs at any time. Further, she had no knowledge of their propensities. Hence, as a matter of law, Tinsley cannot be held strictly liable for Samson's actions.

The trial court's grant of summary judgment in favor of Scott and Tinsley is affirmed.

GARY M. GAERTNER, SR., P.J. and LAWRENCE G. CRAHAN, J.