420

STATE OF MISSOURI, at the Relation of JOHN F. BURKE, Individually and as a member and as Secretary-Treasurer of Pipefitters Local Union No. 562, LAWRENCE L. CALLANAN, Individually and as a member and as Business Manager of Pipefitters Local Union No. 562, and THOMAS F. CALLANAN, Individually and as Director of Health, Welfare and Educational Fund of Pipefitters Local Union No. 562, Relators, v. MICHAEL J. SCOTT, Judge of the Circuit Court of the City of St. Louis, Missouri, Now Presiding in the Criminal Causes Assignment Division Thereof, and EDWARD L. DOWD, Circuit Attorney of the City of St. Louis, Missouri, Respondents, No. 43655—262 S. W. (2d) 614.

Court en Banc, November 9, 1953.

Rehearing Denied, December 14, 1953.

*Morris A. Shenker* for relators.

*Edward L. Dowd* for respondents.

CONKLING, C. J.—This original proceeding praying our writ of prohibition was instituted in this Court by relators on February 19, 1953, and challenges the jurisdiction of respondent Michael J. Scott, as Judge of the Circuit Court of the City of St. Louis, to make a certain order entered by him on February 18, 1953. In that order Judge Scott overruled motions filed by relators to quash three certain subpoenas duces tecum and ordered the enforcement of those separate subpoenas issued at the direction of the respondent Edward L. Dowd, as Circuit Attorney of the City of St. Louis. The subpoenas were separately directed to and served upon the three instant relators, John F. Burke, Lawrence L. Callanan and Thomas F. Callanan.

The issue before us, wherein is involved the legality and propriety of the three above mentioned subpoenas, arose from the following facts: On February 16, 1953, Edward L. Dowd, as Circuit Attorney of the City of St. Louis, caused the three subpoenas to be issued; the subpoenas were each separately served at about 12:30 p. m. on February 16, 1953, and required the appearance of relators at 2:00 p. m. of that date before the February, 1953, term Grand Jury of the City of St. Louis at Room 220 Municipal Courts Building; the subpoena to relator John F. Burke required the production of "all books, papers, and records of whatever kind and nature, pertaining to the employment, pay and discharge of employees of Steamfitters Union, Local 562 (Payroll)"; the subpoena to relator Lawrence L. Callanan was in the same and exact language as that directed to John F. Burke and set out in haec verba just above; and the subpoena directed to relator Thomas F. Callanan required the production of "all books, papers and records of whatever kind and nature pertaining to the Health, Wel-

fare and Educational Fund to Steamfitters Union, over which you have custody."

It appears that the above Union is a labor organization of pipefitters and steamfitters; ▆▆▆ that it has a department or activity known as its Health, Welfare and Educational Fund, of which activity or department Thomas F. Callanan is director; that the Union has a membership of more than 1200; that relator Burke is a member and is Secretary-Treasurer of the Union; and that relator Lawrence L. Callanan is a member and is the Business Manager of said Union.

It also appears that before February 16, 1953, the February, 1953, Term Grand Jury of the City of St. Louis had been impaneled and sworn; it appears from the return of respondents that respondent Dowd had the above subpoenas issued on said date and served "with full knowledge on his (Dowd's) part that the Grand Jury did not have a meeting scheduled for February 16, 1953, and that there would not be a meeting of said Grand Jury on said date and * * * (Dowd) caused said subpoenas duces tecum to be issued for the purpose and with the intent of obtaining *unto himself* the possession and custody of all the books, records and papers of Pipefitters Local Union No. 562 and said Health, Welfare and Educational Fund of Pipefitters Local Union No. 562, and for the purpose of *himself* (Dowd) making a search of and through all of the books, records and papers of said organizations, so that he could present the matters contained in said books and records to the February Term Grand Jury." [Emphasis ours.]

It also appears that at 2:00 p. m. on February 16, 1953, relators appeared and filed in court before respondent Judge Scott their motions to quash the above subpoenas duces tecum upon grounds we hereinafter notice, and respondent Dowd also there appeared before Judge Scott and relators were thereupon heard upon their motion to quash. On February 18, 1953, the respondent circuit judge overruled the above motions to quash the subpoenas duces tecum.

It further appears from respondents' return that the subpoenas were not issued or served at the instance or request of or with the prior knowledge of the Grand Jury; and that the Grand Jury "Had not voted or directed the making of any investigation with respect to said Pipefitters Local Union No. 562 or any of the books, records or papers described in said subpoenas duces tecum."

On February 24, 1953, upon relators' petition therefor we issued our provisional rule in prohibition. Respondents thereafter filed in this Court their return thereto. The cause is at issue by a motion for judgment upon the pleadings. The cause was here docketed and relators filed their brief in this Court. Respondents have filed no brief. The cause was here orally argued by counsel for relators.

Attached to respondents' return to our provisional rule is respondents' "Suggestions in Support of Return." Respondents therein con-

tend that under the above appearing circumstances prohibition will not lie. We first consider that contention.

We have held that prohibition will lie to prevent a court from enforcing obedience to a subpoena duces tecum to produce certain documents before a Grand Jury where the subpoena in question is illegal upon its face and where an attempt to enforce such subpoena would call for the exercise of a purported power clearly in excess of the court's jurisdiction. State ex rel. Copeland v. Wurdeman, 295 Mo. 458, 245 S. W. 551. See also, State ex rel. Ozark Cooperage and Lumber Company v. Wurdeman, 176 Mo. App. 540, 158 S. W. 436. Prohibition is a proper remedy when a court is about to act either without any jurisdiction or in excess of its jurisdiction. State ex rel. Page v. Terte, 324 Mo. 925, 25 S. W. (2) 459, 462, State ex rel. Terminal RR. Assn. of St. Louis v. Flynn, 363 Mo. 1065, 257 S. W. (2) 69, 72. And prohibition may be invoked to prevent the exercise by a public officer of an act judicial in its nature. The character and nature of the act are determinative. State ex rel. Wulfing v. Mooney, 362 Mo. 1128, 247 S. W. (2) 722, 724. The above contention of respondents is overruled.

Respondents seek to justify the respondent Judge's ruling upon the theory that the ▮▮▮ circuit attorney of the city of St. Louis, under Sections 56.550, 540.130, 540.140 and 540.160 (All statutory references are to RSMo 1949 and V.A.M.S.) is a "duly constituted associate of the Grand Jury"; that the circuit attorney "is at once advisor, confidant, informant and assistant of the Grand Jury" and that the statutes "intertwine and associate the Grand Jury's and the circuit attorney's functions for a common end." Respondents further contend that the circuit attorney has statutory "power to summon persons and documents for the purpose of assisting in a Grand Jury criminal investigation"; and that "a meeting or assemblage of the Grand Jury at the exact time indicated for return of a writ (subpoena or subpoena duces tecum) is not a necessary prerequisite to validity" of a subpoena issued upon request of the circuit attorney. Respondents concede, however, that unassociated with the Grand Jury, the circuit attorney has no personal or official power to cause subpoenas or subpoenas duces tecum to be issued to have witnesses or documents brought in before him for his *purely personal* examination.

On the other hand, the relators contend that the circuit attorney has no authority whatever to cause subpoenas to be issued to bring either the relators or any documents before him *outside* the presence of the Grand Jury, or at a time when the Grand Jury was not meeting, or in a matter not then under investigation by the Grand Jury; and relators contend the respondent Judge exceeded his jurisdiction in ordering the enforcement of the instant subpoenas under the above circumstances.

**428**

■ Under Section 540.160, "whenever thereto required by any grand jury, or the foreman thereof, or by the prosecuting attorney, the clerk of the court in which such jury is impaneled shall issue subpoenas and other process to bring witnesses to testify before such grand jury," etc. "Before such grand jury," as there used, clearly means in the presence of the Grand Jury. 'Ex parte Davis, 333 Mo. 262, 62 S. W. (2) 1086, 1088, In re Murphy, 321 Mass. 206, 72 N. E. (2) 413, 418. The request of a circuit or prosecuting attorney for the issuance of a subpoena duces tecum to produce papers *before* a Grand Jury is an act which in its very nature is judicial. But we are cited to no statute or decision, and we have found none, which authorizes either witnesses or documents to be subpoenaed *before* the circuit attorney *outside* the presence of the Grand Jury. .

While each of the three subpoenas duces tecum in question here commanded each separate relator to "be and appear before the February 1953 Term Grand Jury * * * on the 16th day of February, 1952 at 2:00 P. M.," the return of respondents filed in this cause admitted that the circuit attorney himself had caused such subpoenas to be issued and served when he knew there would not be a meeting of the Grand Jury on that date "and for the purpose of obtaining unto himself the possession and custody of all the books, records and papers * * * and for the purpose of himself making a search of and through all of the books, records and papers," etc. Respondents' return further admits that the three subpoenas were not issued at the instance or request of the Grand Jury or with the prior knowledge of the Grand Jury, and that the Grand Jury had not voted or directed the making of any investigation with respect to the union or any of its books, records or papers.

It may be here observed that under Section 540.110 the oath of a witness subpoenaed before a Grand Jury shall be administered by the foreman thereof, who shall also administer the prescribed secrecy oath before such witness shall testify. If the foreman of the Grand Jury is not present neither oath can be administered. We find no authority anywhere for the circuit attorney to administer *any* oath. And by Section 540.130 the circuit attorney is given the duty of examining witnesses in the *presence* of the Grand Jury, "whenever required by any grand jury." Section 540.140 allows the circuit attorney to appear *before* the Grand Jury on *his* request to interrogate witnesses. But we find no authority, statutory ■ or otherwise, permitting the circuit attorney to have witnesses or documents subpoenaed to appear *ostensibly* before the Grand Jury, but in truth and in fact before him, for interrogation or examination, and outside of the presence of the Grand Jury.

The Grand Jury is an arm of the court and is a body with functions of a judicial nature. It may be in session while the court, of which it is a part, is in recess. The Grand Jury may be in recess while the

court is in session. But if the Grand Jury is in temporary recess, and when it does not have a "certain particular matter" under investigation or consideration, may the circuit attorney mentally declare or consider himself a one-man Grand Jury and, because the statute authorizes him to cause subpoenas to be issued for appearances *before the Grand Jury* may the circuit attorney upon personal whim, fancy or desire cause such subpoenas to be issued, and have witnesses come only before him, swear witnesses, take testimony, or seize or examine documents produced by such subpoenaed witnesses merely upon personal caprice or upon no more than a mere mental intention or desire to investigate the certain particular matter in the future? The question compels a negative answer.

To rule the issue otherwise would be to declare that the circuit attorney or the prosecuting attorney is invested with unconstitutional inquisitorial powers to arbitrarily and at will pry into the most intimate personal affairs and papers of any private citizen in violation of every right of privacy, right of due process and right to be protected against unreasonable searches and seizures. "The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society." Wolf v. Colorado, 338 U. S. 25, 27, 69 S. Ct. 1359, 1361, 93 L. Ed 1782. The circuit attorney is not the alter ego of a Grand Jury. Ex parte Peart, 5 Cal. App. (2) 469, 43 Pac. (2) 334. He does not have the general inquisitorial powers possessed by a Grand Jury. He does not possess the power or right himself, apart from the Grand Jury, independent of that body and outside of its presence and without its knowledge, to subpoena and examine either witnesses or documents produced by subpoena issued at his instance or upon his caprice. And this is particularly true under these instant circumstances, for here there was no such investigation pending before the Grand Jury and the documents sought by the three subpoenas duces tecum were not material to anything in any lawful inquiry.

It is further contended by relators that in overruling the motions to quash the above subpoenas and in ordering their enforcement the lower court purported to act in excess of any jurisdiction it possessed, because, (1) the subpoenas were all-inclusive and constituted an unwarranted and unbridled inquisition, violated relators' right of privacy and violated Section 15 of Article I of the Constitution forbidding unreasonable search and seizure, and, (2) the subpoenas failed to describe the books, papers and records as nearly as may be and did not sufficiently identify and designate the documents sought.

The portions of the three subpoenas, with respect to the books, papers and records ordered to be produced, as quoted above in the second paragraph of this opinion, speak for themselves. There is simply nothing in the language of the subpoenas to designate or identify the papers sought; there is no limitation whatever as to time; there

is no reasonable particularity as to subject matter; there is no averment as to materiality as to any field of investigation or inquiry; there is no reference to any pending cause or investigation, and indeed there was no pending cause and there was no pending investigation. In Ex parte Brown, 72 Mo. 83, this Court considered the sufficiency of a subpoena duces tecum to bring certain papers before a Grand Jury, and in part said, l. c. 93, 94:

"The [constitutional] section declares that the people ought to be secure, in their papers, from unreasonable searches, and whether a subpoena ▉▉▉ *duces tecum* for papers, or search warrant for chattels, be issued, the spirit of that section demands that while in the latter case there must be probable cause, supported by oath or affirmation, with a description in the warrant of the place to be searched, or the thing to be searched for, in the other, it shall at least give a reasonably accurate description of the paper wanted, either by its date, title, substance or the subject it relates to, and that it shall be shown to the court or authority issuing the process that there is a cause pending in a court and that the paper is material as evidence in the cause. To permit an indiscriminate search among all the papers in one's possession for no particular paper, but some paper, which may throw some light on some issue involved in the trial of some cause pending, would lead to consequences that can be contemplated only with horror, and such a process is not to be tolerated among a free people. A grand jury has a general inquisitorial power. They may ask a witness summoned before them, without reference to any particular offense which is a subject of inquiry, what he knows touching the violation of any section of the criminal code. Give such a body, in addition, the power to search any man's papers for evidence of some crime committed, and you convert it into a tribunal which would soon become as odious to American citizens as the Star Chamber was to Englishmen, or the Spanish Inquisition to the civilized world."

The general rule as to the necessity of specification of books, records and documents within a subpoena duces tecum is stated in a 1952 note in 23 A.L.R. (2) 862, 867, 869, in these words: "The courts are apparently uniformly agreed that an application for the production of books, records and documents, made in the form of a subpoena duces tecum, must designate and specify with some reasonable degree of certainty and particularity the documents, papers, etc., sought to have produced. * * * It has been generally held that a broad and sweeping order for the production of 'any and all' books * * * is not a sufficient designation."

In People v. Reynolds, 350 Ill. 11, 182 N. E. 754, a subpoena duces tecum was directed to certain officers of a labor union requiring the production before the Grand Jury of " 'all day books, cash books,

ledgers, bank books, check books and any and all other books of account showing the payment of money' to the union, its officers or agents, by members," etc., and showing its membership, income, disbursements such as might afford any information respecting a certain complaint against the union officers *then pending* before the Grand Jury. The Illinois Supreme Court ruled the subpoena invalid and held that the papers sought to be produced should have been reasonably specified, and that to demand in general terms the production of *all,* or even a substantial part, of the records or documents was not sufficient and that the subpoena was lacking in a sufficiently particular description of the records sought. The facts now before us here support our instant conclusion more strongly than do the facts appearing in People v. Reynolds, supra, for here there was no pending action and not even a pending investigation before the Grand Jury. See also cases collected in 23 A.L.R. (2) 880, 881, 882, 883, and see 25 Am. Jur., Grand Jury, § 34, p. 858, 859, note 14, and cases cited.

This Court has held in civil cases that our later statutes "Though instancing a more liberal policy * * * do not, of course, permit an unbridled investigation or 'fishing expedition' into an adversary's books and papers." State ex rel. St. Louis Union Trust Co. v. Sartorius, 351 Mo. 111, 171 S. W. (2) 569. And in State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 219 S. W. (2) 383, 390, we considered and held erroneous an order of the respondent Judge which ordered produced for inspection "*all* written agreements" between certain parties. We there held that such an order failed to comply with the statutory requirements as to designation. ▆ The instant subpoenas must be held to be void upon their face.

For reasons above appearing our provisional rule in prohibition heretofore issued herein is made absolute. It is so ordered. All concur.