**CBS INC. (KMOX–TV), Plaintiff,**

v.

**The Honorable Robert L. CAMPBELL, Judge of the Circuit Court of St. Louis County, Division No. 15, Defendant.**

**No. 46176.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 9, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 17, 1982.

Application to Transfer Denied Feb. 23, 1983.

Michael P. Casey, St. Louis, for plaintiff.

Craig Ellis, Asst. Pros. Atty., Clayton, for defendant.

REINHARD, Judge.

On July 28, 1982, the St. Louis County May Term 1982 Grand Jury served a subpoena duces tecum upon the Custodian of Records of plaintiff, CBS (KMOX–TV, News Department), for:

any and all videotapes and audio tapes of conversations with Francis "Red" Markwell and Lloyd Grice concerning gambling, video poker machines, Goodtime Bingo Company, and the placement of

video poker machines in bars, taverns, and restaurants, including, but not limited to a taped conversation between Matt Mahar [sic] and Francis "Red" Markwell which took place Saturday, July 24, 1982, in St. Louis County, Missouri, and any video tapes showing either Francis "Red" Markwell and/or Lloyd Grice.

Portions of the audio and video tapes of the material described above were broadcast by KMOX–TV on July 28 and 29, 1982, as part of a two part series on gambling in the St. Louis area. Plaintiff filed a motion to quash the subpoena or in the alternative to modify it based on the First Amendment to the United States Constitution and Article I, section 8 of the Missouri Constitution.

Along with its motion to quash, plaintiff filed the affidavits of Frederick Burrows, News Director, and of Matt Meagher, a KMOX reporter. In addition, the trial court viewed a videotape of the "on air" news broadcast on July 28, and 29. Defendant denied plaintiff's motion and ordered plaintiff to appear before the grand jury with the tapes on August 26, 1982. On application of plaintiff, our preliminary order in prohibition was issued. For reasons set forth below, we now quash the preliminary order as improvidently granted.

In the late spring of 1982, Matt Meagher, a KMOX–TV reporter, as part of KMOX's news gathering commenced an investigation into illegal gambling involving video poker games at bars, taverns, and restaurants in the St. Louis metropolitan area. Meagher believed that Francis "Red" Markwell was involved "in placing [these] video poker machines in various establishments throughout the area" and was connected with the illegal gambling.

As part of the investigation, Meagher posed as a tavern owner interested in obtaining video poker machines and met with "Red" Markwell in front of a vacant tavern in St. Louis County. Meagher was wired for sound and a hidden TV camera recorded their meeting on July 24, 1982. At that time Markwell did not know Meagher was a TV·reporter. In that part of the meeting

telecast on the 28th of July, Markwell stated a willingness to place video poker machines in Meagher's fictitious tavern and acknowledged that tavern owners to whom he supplied machines paid customers cash for winning hands of poker on the machines. He further discussed the manner in which customers were paid, the amount of the "take" from the machines, and the method of dividing and concealing the profits.

In the second part of the series broadcast on July 28, Meagher asserted that Markwell, a state representative, had an interest with Lloyd Grice in the Goodtime Bingo Co. which constituted a violation of the state's conflict of interest statute. See, §§ 105.460 and 105.478, RSMo.1978.

Plaintiff is willing to produce its on air broadcast tapes for the grand jury, but asserts that complying with the subpoena will force it to provide unpublished, non-broadcast tapes or "out takes" which constitutes an interference with its ability to gather news and with its editorial process, a violation of a qualified privilege founded on the First Amendment to the United States Constitution and Article I, § 8 of the Missouri Constitution.

The state argues that neither the United States nor the Missouri Constitution protects plaintiff's "outtakes" from disclosure to the grand jury.

Our research has disclosed no Missouri case which has directly confronted this issue. The Supreme Court of Missouri in *Ex parte Holliway,* 272 Mo. 108, 199 S.W. 412 (1917) affirmed the contempt conviction of a "St. Louis Republic" newspaper reporter who refused to answer questions of a grand jury concerning the source of information for an article he wrote. The reporter though, did not raise the issue of a reporter's privilege and it was not addressed by the court.

Neither has our state legislature seen fit to enact a Reporter's Shield Law. Many states[1] have created a statutory privilege

1. Ala.Code tit. 7, § 370; Alaska Comp. Laws Ann. §§ 09.25.150–.220; Ariz.Rev.Stat.Ann.

for journalists which can be asserted in a grand jury proceeding and which may protect documents, tapes and notes as well as testimony. *See, In re Taylor,* 412 Pa. 32, 193 A.2d 181 (1963).

The existence of a qualified privilege for journalists while unanswered in Missouri has been raised frequently in other cases in many jurisdictions in this country.

In *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the United States Supreme Court was confronted with the First Amendment claims involving confidential sources and information of journalists before the grand jury. The Court in a 5–4 decision held no absolute privilege existed which prevented a grand jury from interrogating newsmen. The Court required the three newsmen to appear and answer questions of the grand jury relevant to an investigation into crime. The court held though, that:

> [N]ews gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment. Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no jurisdiction.

408 U.S. at 707, 92 S.Ct. at 2670.

Since *Branzburg v. Hayes,* most courts faced with this question have not recognized a qualified privilege for journalists in a grand jury proceeding. *Lightman v. State,* 15 Md.App. 713, 294 A.2d 149 (1972)

affirmed, 266 Md. 550, 295 A.2d 212, *cert. denied,* 411 U.S. 951, 93 S.Ct. 1922, 36 L.Ed.2d 414; *In re Bridge,* 120 N.J.Super. 460, 295 A.2d 3 (1972), *cert. denied,* 410 U.S. 991, 93 S.Ct. 1500, 36 L.Ed.2d 189; *Andrews v. Andreoli,* 92 Misc.2d 410, 400 N.Y.S.2d 442 (1977). *See* 99 A.L.R.3d 37, *Privilege of Newsgatherer Against Disclosure of Confidential Sources or Information* (1980). Those courts that have recognized a qualified privilege for journalists in a grand jury proceeding have done so only in connection with a journalist's confidential sources or information. *Morgan v. State,* 337 So.2d 951 (Fla.1976); *State v. Knops,* 49 Wis.2d 647, 183 N.W.2d 93 (1971); *State v. Zelenka,* 83 Wis.2d 601, 266 N.W.2d 279 (1978). Courts which have recognized a qualified privilege for journalists for unpublished information, regardless of whether it relates to confidential sources or information have not done so in the context of a grand jury proceeding. *U.S. v. Cuthbertson,* 630 F.2d 139 (3rd Cir.1980); *U.S. v. Blanton,* 534 F.Supp. 295 (S.D.Fla.1982); *Loadholtz v. Fields,* 389 F.Supp. 1299 (M.D.Fla.1975).

A careful reading of the cases cited by plaintiff and defendant as well as those discovered by our own research discloses a greater willingness to provide protection for the news media in cases involving civil and criminal trials than in grand jury proceedings. We think that the secrecy of the grand jury proceeding and the dual function of the grand jury in determining whether a crime has been committed[2] and in protecting citizens against unfounded accusations are factors in this status. *See State v. Greer,* 605 S.W.2d 93, 96 (Mo.1980), *rev'd on other grounds, Missouri v. Greer,*

§ 12-2237; Cal.Evid.Code § 1070; Ill.Ann.Stat. ch. 51, § 111; Ind.Stat.Ann. § 34–3–5–1; Ky. Rev.Stat. § 421.100; La.Rev.Stat. tit. 45, §§ 1451–1454; Md.Ann.Code art. 35, § 2; Mich.Comp.Laws Ann. § 767.5a; Mont.Rev. Codes Ann. tit. 93, §§ 601–1, 602–2; Nev.Rev. Stat. tit. 4, § 49.275; N.J.Stat.Ann. § 2A:84A–21; N.M.Stat.Ann. § 38–6–7; N.Y.Civil Rights Law § 79–h; Ohio Rev.Code Ann. §§ 2739.04, 2739.12; Pa.Stat.Ann. tit. 28, § 330.

**2.** "It is the solemn and important duty that every citizen owes to his country," to testify in a grand jury proceeding "against offenders, against the peace and good order of the community." *Ward v. State,* 2 Mo. 80 (1829). The

power of the grand jury to subpoena witnesses or issue a subpoena duces tecum in general has not been questioned. *See, State ex rel. Burke v. Scott,* 364 Mo. 420, 262 S.W.2d 614 (1953); *Ex parte Brown,* 72 Mo. 83 (Mo.1880). A subpoena duces tecum issued by a grand jury must designate and specify with some reasonable degree of "particularity the documents, papers, etc. "sought to be produced. *State ex rel. Burke v. Scott,* 262 S.W.2d at 619. Here, plaintiff has not challenged the subpoena duces tecum because it is vague, overly broad or does not describe the material to be produced with particularity.

451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981), affirmed on remand, *State v. Haggard,* 619 S.W.2d 44 (Mo.banc 1981); *Conway v. Quinn,* 168 S.W.2d 445, 446 (Mo.App. 1942). The secrecy of the grand jury proceeding as reflected in §§ 540.080, 540.110, 540.310, 540.320, RSMo.1978, ameliorates the harmful effects of disclosure that would result in an ordinary civil or criminal trial.

Fully cognizant of the importance of a free and independent press, we conclude that the trial court did not err in refusing to quash the subpoena duces tecum. We find there are no claims of confidential sources or information involved in producing the video and audio tapes for the grand jury in the present case. Any statements Markwell made to Meagher were made to him as a potential tavern owner and not as a reporter. There is no allegation by plaintiff that Meagher made any promise to Markwell or Grice that their conversations would be kept confidential. The only claim of any confidential sources or information is contained in Meagher's affidavit filed with the trial court in which he stated:

> [I]n preparing the series ... I made explicit promises to maintain the confidentiality of certain persons interviewed in order to not compromise their positions or reveal their identities. One individual was assured that the videotaped interview with his voice would be aired in part but that his face would be shadowed in order that he could not be recognized. I was permitted to take videotaped interviews only if I agreed not to reveal certain identities. I believe those individuals would not have permitted themselves to be interviewed or would not have cooperated to the extent they did if they had not been promised confidentiality ....

But, the subpoena duces tecum requests only the production of those videotapes showing Markwell or Grice and the video and audio tapes of conversations with Markwell or Grice. Any interview between Meagher and any individuals promised confidentiality will not have to be produced for the grand jury. Indeed, the assistant prosecuting attorney stated during oral argument that the subpoena was drafted to avoid requiring CBS to produce "outtakes" involving confidential sources or information.

Moreover, plaintiff has not established that the grand jury in the present case has been empanelled or the investigation conducted other than in good faith or that the grand jury actions constitute impermissible harassment.

Neither the United States nor Missouri Constitution[3] prevents the production of the CBS "outtakes" before the St. Louis County grand jury. We emphasize though, that our opinion is limited to the facts as they have been presented in this case.

Preliminary order in prohibition heretofore issued, is quashed.

STEWART, C.J., and DOWD, J., concur.

---

3. Article I, § 8 provides:
   That no law shall be passed impairing the freedom of speech, no matter by what means communicated; that every person shall be free to say, write or publish, or otherwise communicate whatever he will on any subject, being responsible for all abuses of that liberty; and that in all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and in suits and prosecutions for libel the jury, under the direction of the court, shall determine the law and the facts.