**STATE of Missouri, ex rel., CLASSIC III INCORPORATED and Carl Danbury, Relators,**

**Pulitzer Publishing Company, Amicus Curiae,**

**Missouri Press Association, Amicus Curiae,**

**v.**

**Hon. William W. ELY, Judge 16th Judicial Circuit, Respondent.**

**No. WD 53850.**

Missouri Court of Appeals, Western District.

Oct. 28, 1997.

Paul V. Herbers, Cooling & Herbers, Kansas City, Edward H. Wasmuth, Jr., Smith, Gambrell & Russell, L.L.P., Atlanta, GA, for Relators.

James P. Dalton, P.C., Jefferson City, K. Michael O'Connell, Gregory M. Cork, Cullen & O'Connell, Washington, DC, for Respondent.

Mark P. Johnson, Amy E. Bauman, Sonnenschein Nath & Rosenthal, Kansas City, for The Hearst Corporation, amicus curiae.

Robert Hoemeke, Joseph E. Martineau, Victoria I. Goldson, Lewis, Rice & Fingersh,

L.C., St. Louis, Thomas M. Martin, Kansas City, for Pulitzer Publishing Company, amicus curiae.

Before ELLIS, P.J., and LAURA DENVIR STITH and HOWARD, JJ.

LAURA DENVIR STITH, Judge.

Relators, Classic III Incorporated and Carl Danbury, petition this Court for a writ of prohibition to forbid Judge William M. Ely from enforcing his order compelling Classic III and Mr. Danbury to reveal the identities of individuals with whom Classic III's employees spoke before and after the publication of an article in *rpm*, a magazine published by Classic III. The evidence in the record is that Classic III and Mr. Danbury did not use any information provided by these individuals in the preparation of the article and that the individuals' identities are therefore protected by the reporter's shield privilege. We find that the individual's identities are privileged and, therefore, make the preliminary writ of prohibition permanent.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Classic III Incorporated publishes a monthly magazine called *rpm* marketed to truck drivers. Carl Danbury, associate publisher of the magazine, wrote an article entitled "A Special Report: Two Owner–Operator Associations Are Under Scrutiny Because of Impending Court Battles," which was published in the April 1995 issue of *rpm*. The article concerned the insurance practices of Owner–Operator Services, Inc. ("OOSI"), a subsidiary of the Owner–Operator Independent Truck Drivers Association, Inc. ("OOIDA") that offers insurance to OOIDA members. The cover of the issue was labeled "Special Report," and the inside cover read "Guilt By Association? OOIDA & I–TOO Insurance Practices in Question." [1] The text of the article reported, among other things, that a former OOSI employee had been criminally indicted in Florida for fraud and racketeering.

1. The article also reported that a civil action had been filed against the Independent Truck Owner Operators Association ("I–TOO"), but that organization was not a party to the defamation action and is not a party to these proceedings.

In doing research for the article, Mr. Danbury had a telephone conversation with an individual who asked that his or her identity be kept confidential. Mr. Danbury swore in an affidavit that he did not rely on anything this person said when preparing the article. Also prior to publication of the article, Roxanne Campbell, editorial director of *rpm*, spoke with two truckers. She specifically promised those individuals confidentiality. After publication of the April issue, Ms. Campbell spoke with several individuals who commented on Mr. Danbury's article. These individuals spoke with Ms. Campbell in confidence. Ms. Campbell also received an anonymous phone call from an individual referring to the article. That person specifically requested the comments remain confidential.

In May 1995, OOIDA and OOSI ("Plaintiffs") filed a defamation action against Classic III and Mr. Danbury ("Relators") claiming that the April 1995 issue of *rpm* contained false and defamatory statements.[2] During her deposition, Ms. Campbell testified that she was aware of two independent truckers who had questioned OOIDA insurance practices, but that *rpm* did not rely on them in preparing the article. When asked to identify those individuals, Ms. Campbell refused, and counsel objected on the basis that the information was privileged. During Mr. Danbury's deposition, when asked about the confidential telephone conversation he had, he refused to reveal the individual's identity, and counsel objected on the basis of the reporter's shield privilege. Plaintiffs have offered no evidence to counter Relators' claims they promised confidentiality and that they did not rely on these confidential informants in preparing the article.

OOIDA and OOSI also submitted interrogatories to Classic III and Mr. Danbury requesting the details of investigations related to the article and the identities of any individuals Classic III's employees communicated with in connection with the article. Classic III and Mr. Danbury again refused to provide the identities of the above individuals who had contacted them in confidence on the basis that this information was protected by the reporter's shield privilege. They also refused to provide the names of the individuals who called Ms. Campbell to comment on the article after it was published. Relators stated that those individuals spoke to Ms. Campbell in confidence and probably would not have spoken to her if they had known their names would become a matter of public record. Relators also noted that these conversations could not have formed a basis for the article because they took place after publication. Finally, Relators do not know who made the anonymous phone call to Ms. Campbell after the article was published, and they refused to reveal the content of that conversation. OOIDA and OOSI then filed a motion to compel them to provide this information. Their motion to compel does not dispute that the Relators promised confidentiality to their sources, but does contest their right to honor that promise in the face of Plaintiff's legitimate attempts to obtain evidence relevant to their claims.

The court below held that Missouri does not recognize a reporter's shield privilege of any kind. It therefore analyzed Plaintiffs' discovery requests under Missouri's general rules of discovery. Because the court believed that the requested information might lead to the discovery of relevant evidence, it ordered Relators to respond to the discovery by revealing the requested names of persons with whom Mr. Danbury and Ms. Campbell had spoken. Relators immediately sought a writ of prohibition from this Court, arguing that prohibition is the proper remedy where, as here, the trial court has ordered a party to reveal otherwise privileged information.

## II. PROHIBITION IS THE PROPER REMEDY

We agree that prohibition is the proper remedy. As the Missouri Supreme Court reaffirmed in a case decided after we had granted our preliminary writ in this case:

> When a party claims material that it has been directed to produce is privileged, a

**2.** The parties dispute whether OOIDA and OOSI claim that only the cover and headlines were defamatory or whether they also claim that statements contained in the text of the article were defamatory.

writ of prohibition is appropriate to determine whether the privilege claimed in fact covers the materials demanded. This is because "the damage to the party against whom discovery is sought is both severe and irreparable" if the privileged material is produced and this "damage cannot be repaired on appeal."

*State ex rel. Boone Retirement Ctr., Inc., v. Hamilton,* 946 S.W.2d 740, 741 (Mo. banc 1997) (quoting *State ex rel. Wilfong v. Schaeperkoetter,* 933 S.W.2d 407, 408 (Mo. banc 1996)).

## III. THE FIRST AMENDMENT PROVIDED RELATORS WITH A QUALIFIED PRIVILEGE IN THIS CIVIL CASE INVOLVING CONFIDENTIAL SOURCES

As Plaintiffs correctly note, no Missouri court has as yet affirmatively recognized a reporter's shield privilege based on the First Amendment to the United States Constitution or based on the comparable provision set out in Article I, Section 8 of the Missouri Constitution. Neither has the Missouri legislature enacted such a privilege by legislation. As Plaintiffs recognize, however, this does not end our inquiry, for neither has any Missouri court ever held that Missouri would not recognize such a privilege. Indeed, Plaintiffs recognize that all but a tiny minority of courts to address the issue in the last twenty-five years have held that such a privilege must be recognized in appropriate circumstances so as to protect First Amendment freedoms. Plaintiffs' argument is rather that "[i]f the Missouri judiciary is to adopt a privilege in an effort to bolster those freedoms, however, it should do so only in the context of a case in which those freedoms truly are at issue." This case, Plaintiffs assert, is a simple discovery dispute which does not involve the privilege at all, and, thus, should not be the vehicle for recognition of this privilege.

In support of this argument, Plaintiffs suggest that the cases which have adopted a qualified reporter's shield privilege "almost uniformly have emphasized the privilege's role in protecting the **sources** of information used by the press in preparation and publication of news stories." Plaintiffs then argue that where, as here, the reporter claims that he or she did not use the information provided by the confidential source in preparing the allegedly libelous article, then the privilege does not apply; it is limited solely to sources of information actually included by the reporter in the article.

The central issue before us is thus whether this Court should find that a "reporter's shield privilege" applies to protect Relators from being forced to reveal the identity of and confidential communications made by confidential sources where, as here, the record shows that Relators did in fact promise confidentiality but did not rely on these sources in actually preparing the allegedly libelous article. For the reasons discussed below, we answer in the affirmative.

### A. Development of Reporter's Shield Privilege in Grand Jury Cases.

A fuller understanding of the principles underlying our ruling requires a brief analysis of the development of the law governing a qualified reporter's shield privilege. The United States Supreme Court first addressed the issue whether the First Amendment guarantees a reporter a privilege against revelation of confidential sources or information in *Branzburg v. Hayes,* 408 U.S. 665, 684–85, 92 S.Ct. 2646, 2658–59, 33 L.Ed.2d 626 (1972).

*Branzburg* involved the limited issue of whether a reporter could refuse to reveal to a grand jury the names of persons whom he had interviewed. A plurality of the Court held that these facts did not invoke a First Amendment privilege against compelled disclosure of criminal activity to the grand jury. A strong dissent would have recognized such a privilege. The deciding vote was cast by Justice Powell, who made it clear in his concurring opinion that he would recognize such a privilege in other circumstances, stating:

The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these

vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions.

Branzburg, 408 U.S. at 710, 92 S.Ct. at 2671 (Powell, J., concurring).

The Eastern District of the Missouri Court of Appeals first addressed the issues discussed in *Branzburg* ten years later in *CBS Inc. (KMOX–TV) v. Campbell*, 645 S.W.2d 30 (Mo.App.1982). In that case a grand jury sought production of a television station's investigatory audiotapes and videotapes of conversations its reporter had with people involved in illegal gambling. The subjects in the tapes were not promised confidentiality, and indeed portions of the tapes had already been broadcast. The subpoena sought "out takes," or unpublished portions, of the audiotapes and videotapes. *CBS* held that Missouri would join the majority of courts in following *Branzburg* and refusing to recognize a qualified privilege in a grand jury proceeding where, as in that case, there was no claim that the information sought was confidential or that the grand jury investigation was a sham undertaken to obtain the subpoenaed information. 645 S.W.2d at 33.

*CBS* also specifically emphasized, however, that its opinion was "limited to the facts as they have been presented in this case." *Id.* *CBS* did not hold that Missouri would not recognize a privilege against revelation of the identities of confidential sources in civil cases. Indeed, the narrowness and caution with which the court drew its holding made it clear that the court recognized that such a case would present a very different issue for resolution. It is this issue which we must decide today.

## B. Development of Reporter's Shield Privilege in Civil Cases.

While Missouri courts have not had occasion to address the existence of a reporter's shield privilege in civil cases, many other courts have done so. Of the ten federal courts of appeals to address the issue, nine have recognized the privilege in at least some form.[3] The Eighth Circuit did so in *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir. 1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973), a case decided just a few weeks after *Branzburg* was handed down.

In *Cervantes*, Mayor Cervantes of St. Louis, Missouri, sued Time, Inc. for an allegedly libelous article in Life Magazine which implied that the Mayor possessed personal and business interests in the perpetuation of criminal activity in his city. Mayor Cervantes sought to discover the names of anonymous sources who had provided information relied on by the magazine in preparing the article. The Eighth Circuit upheld the district court's refusal to require revelation of this information, stating that it would not require a reporter to reveal confidential news sources where the person seeking the discovery simply speculated that the discovery might reveal relevant information. Rather, and unlike in the case of an attempt to discover unprivileged information, in order to obtain the names of anonymous sources the person seeking discovery must first make "a concrete demonstration that the identity of defense news sources will lead to persuasive evidence on the issue of malice.... The point of principal importance is that there

---

**3.** *See Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir.1980); *United States v. Burke*, 700 F.2d 70 (2d Cir.), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983); *Baker v. F & F Inv.* 470 F.2d 778 (2d Cir.1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *United States v. Cuthbertson*, 630 F.2d 139 (3d Cir.1980), *cert. denied sub nom. Cuthbertson v. CBS, Inc.*, 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981); *Riley v. City of Chester*, 612 F.2d 708 (3d Cir.1979); *LaRouche v. National Broadcasting Co., Inc.*, 780 F.2d 1134 (4th Cir.), *cert. denied*, 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir.), *supp. op.*, *reh'g denied*, 628 F.2d 932 (5th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981); *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir.1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973); *Shoen v. Shoen*, 48 F.3d 412 (9th Cir.1995); *Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433 (10th Cir.1977); *Carey v. Hume*, 492 F.2d 631 (D.C.Cir.) *cert. dismissed*, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974); *Zerilli v. Smith*, 656 F.2d 705 (D.C.Cir.1981). The Sixth Circuit has rejected the privilege in a case involving a writ of habeas corpus. *In re Grand Jury Proceedings*, 810 F.2d 580 (6th Cir.1987).

must be a showing of cognizable prejudice before the failure to permit examination of anonymous news sources can rise to the level of error." *Id.* at 994.

Since *Cervantes,* federal and state courts have further developed and quantified the kinds of factors which courts may consider in determining how to balance a claim of First Amendment privilege against a claimed right to discovery in a civil case. Nearly all of these cases recognize that the claim of *privilege* is strongest where, as here, the information sought is the names of persons who have given information in confidence to the reporter. *See, e.g., Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 725 (5th Cir.), *supp op., reh'g denied,* 628 F.2d 932 (5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981) (stating, "policies supporting a First Amendment privilege would appear to be stronger here, where a defamation plaintiff seeks to compel disclosure of the name of a confidential informant...", although court held that privilege must yield in this particular case).[4] The fact of such a promise is not in itself dispositive, however. Similarly, these cases have recognized that the claim of a right to *discovery* is strongest where, as here, the case is against a media defendant and involves an alleged libel by the reporter. Again, however, this factor is not in itself dispositive. *Continental Cablevision v. Storer,* 583 F.Supp. 427, 433 (E.D.Mo. 1984).

■ Rather, in determining how to balance the needs of disclosure and confidentiality in cases such as this one where the plaintiffs seek the identity of confidential sources in a case against a media defendant, the courts have focused on the presence or absence of four additional factors: (1) whether the movant has exhausted alternative sources of the information; (2) the importance of protecting confidentiality in the circum-

stances of the case; (3) whether the information sought is crucial to plaintiff's case; and (4) whether plaintiff has made a prima facie case of defamation. They then balance these factors in determining whether to apply the privilege to the particular information or identity sought.

■ For the reasons discussed below, we adopt the balancing test recognized above. In so doing, however, we emphasize that the trial court must undertake this balancing test only if the journalist invokes a reporter's shield privilege based on a promise of confidentiality to his or her source. Where the party seeking the information contests the claim that the source was promised confidentiality, or contests other key facts such as whether the information was relied on in preparing the allegedly libelous article, then application of the above test will require the court to hold an evidentiary hearing to resolve these factual disputes. Here, Plaintiffs have not offered any facts to controvert Relators' affidavits and deposition testimony that they did promise confidentiality to their sources and that they did not rely on the information they received in preparing their article. We therefore proceed to apply the four factors noted above based on the assumption that the facts asserted by Relators are true.

### 1. Alternative Sources of Information.

■ The first factor to consider in weighing a claim of privilege is whether the movant can obtain the information from alternative sources. *Silkwood v. Kerr–McGee Corp.,* 563 F.2d 433, 438 (10th Cir.1977). As the Third Circuit has stated:

All courts which have considered this issue have agreed that the federal common law privilege of news writers shall not be breached without a strong showing by those seeking to elicit the information that

---

4. *See also United States v. LaRouche Campaign,* 841 F.2d 1176, 1181 (1st Cir.1988) ("When there is no confidential source or information at stake, the identification of First Amendment interests is a more elusive task."); *Baker v. F & F Inv.* 470 F.2d 778, 783 (2d Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973) ("Accordingly, though a journalist's right to protect confidential sources may not take prece-

dence over that rare overriding and compelling interest, we are of the view that there are circumstances, at the very least in civil cases, in which the public interest in non-disclosure of a journalist's confidential sources outweighs the public and private interest in compelled testimony."); *Continental Cablevision v. Storer Broadcasting,* 583 F.Supp. 427, 434 (E.D.Mo.1984).

there is no other source for the information requested.... The party seeking the information must show 'that his only practical access to crucial information necessary for the development of the case is through the newsman's source.' Plaintiff must show that they exhausted other means of obtaining the information.

*Riley v. City of Chester,* 612 F.2d 708, 716–17 (3d Cir.1979) (citations omitted). Similarly, a court should not conduct an *in camera* review simply because a party requests privileged information. Rather, "the district court should not be required to make the delicate balance of interests required by the privilege unless the defendant first shows that he is unable to acquire the information from another source that does not enjoy the protection of the privilege." *United States v. Cuthbertson,* 630 F.2d 139, 148 (3d Cir.1980), *cert. denied sub nom. Cuthbertson v. CBS, Inc.,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981).

Here, the information sought is the identity of confidential sources.[5] Plaintiffs made no showing at all that they have sought alternative sources for the identity of these sources, although common sense indicates that it would be very difficult to find alternative sources for the pre-publication sources, since what they want to know is the names of the two truckers and the other individual who spoke with the reporters before the article was published. It seems unlikely that anyone but these three confidential sources or other persons at the magazine would have this information.

We find no basis for believing that there are no reasonably available alternative sources of the information sought from the post-publication sources, however. Plaintiffs say they need to know the names of those who confidentially contacted the magazine after the article was published to comment on the article or related topics because these names may be relevant to show damages resulting from the article. Assuming that the names may have potential relevance to damages, it is evident that similar evidence of damages would be available by contacting any of the thousands of other truckers who read the magazine. No reason has been offered why these sources cannot be used to obtain information relevant to the damage done by the article, if any.[6]

## 2. Importance of Protecting Confidentiality.

In any particular case, the court must balance the importance of protecting confidentiality against a party's need for the particular information. "[T]he compelled disclosure of confidential sources ... may substantially undercut the public policy favoring the free flow of information to the public that is the foundation for the privilege." *Cuthbertson,* 630 F.2d at 147. On the other hand, if every assertion of confidentiality were to automatically result in a denial of any discovery, then a libel plaintiff's right to discover information which is relevant to his or her claim could also be unduly restricted. For this reason, the court should evaluate whether the claimed need for confidentiality is real, or whether, for instance, the reporter simply automatically promised confidentiality as part of a blanket effort to stymie any future attempt at discovery.

■ The balancing of these policy concerns favors recognizing a privilege in this case, in which Plaintiffs have not contested the sworn affidavits of Mr. Danbury and Ms. Campbell that specific promises of confidentiality were made to all those whose names are sought by respondent. The need for such promises is evident where, as here, the

---

**5.** As noted above, the identity of sources is the type of information which courts are most willing to protect. Our balance of this and other relevant factors in this case is limited to a determination of whether Plaintiffs are entitled to discover the identities of Relators' sources. The weight to be given each factor, and the determination whether the information was reasonably available from alternative sources, whether it went to the heart of the claim, and so forth, might change if what was sought were substantive information rather than sources and depending on the nature of the substantive information sought.

**6.** Indeed, to argue that only the few people who contacted the magazine after publication thought badly of Plaintiffs as a result would severely undercut the magnitude of Plaintiffs' damage claim.

sources of information are truckers and those involved in the trucking industry. *rpm* Magazine is a magazine for truckers. It is read by truckers, and the sources of information in many of the articles in it are truckers. Relators credibly assert that if they were forced to reveal the names of truckers and others who contacted them in confidence upon an assurance of confidentiality, their credibility would be seriously harmed and their sources of information would be irreparably damaged. As stated by *Zerilli v. Smith,* 656 F.2d 705, 711 (D.C.Cir.1981):

> [T]he press' function as a vital source of information is weakened whenever the ability of journalists to gather news is impaired. Compelling a reporter to disclose the identity of a source may significantly interfere with this news gathering ability; journalists frequently depend on informants to gather news, and confidentiality is often essential to establishing a relationship with an informant.

*Id.* at 711. Where, as here, the evidence does not support a finding that the journalist is falsely claiming a promise of confidentiality to frustrate prosecution of a legitimate claim, and there are legitimate reasons why the journalist would reasonably want to protect his or her news sources, this factor favors recognition of a privilege.

### 3. *Whether Information Goes to Heart of Case.*

■ A third key factor in balancing the need for confidentiality with the need for discovery is whether the requested information goes to the heart of or is crucial to the plaintiff's claim of libel. Plaintiffs argue that the identities of the informants need not be crucial to the libel claim, and that by proving their relevance it has shown enough to require revelation of Relators' contacts. We disagree. That evidence is relevant or reasonably likely to lead to the discovery of admissible evidence is the minimum requirement for discovery of any kind under Rule 56.01(b). If that were all that were required

to be shown in order to require revelation of confidential sources, the privilege would be meaningless, for it would offer no greater protection than is offered by proper application of the discovery rules.[7]

More persuasive are cases such as *Cervantes,* in which the Eighth Circuit held that the identity of sources should be revealed only if the movant shows concrete evidence that the source will lead to persuasive evidence on a key issue. 464 F.2d at 996. Similarly, *Mitchell v. Superior Court (Synanon Church),* 37 Cal.3d 268, 208 Cal.Rptr. 152, 690 P.2d 625 (1984), held, "The majority view, which we adopt, is that mere relevance is insufficient to compel discovery; disclosure should be denied unless the information goes 'to the heart of the plaintiff's claim.'" *Mitchell,* 208 Cal.Rptr. at 159, 690 P.2d at 632 (quoting *Garland v. Torre,* 259 F.2d 545 (2d Cir.), *cert. denied,* 358 U.S. 910, 79 S.Ct. 237, 3 L.Ed.2d 231 (1958)). Similarly, in *Carey v. Hume,* 492 F.2d 631, 636 (D.C.Cir.), *cert. dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974), the District of Columbia Circuit Court of Appeals stated that whether the information sought goes to the heart of the action is "certainly the most important factor in *Garland.*" *See also United States v. Burke,* 700 F.2d 70, 77 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983) (quoting *In re Petroleum Products Antitrust Litig.,* 680 F.2d 5, 7 (2d Cir.), *cert. denied sub nom. Arizona v. McGraw–Hill, Inc.,* 459 U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982)) (to obtain discovery, material sought must be "highly material and relevant, necessary or critical to the maintenance of the claim").

Applying this principle, cases have held that if the confidential source is relied on for an essential point of libel in the article, then the need to identify and question the source is of central importance. *See Carey,* 492 F.2d at 637. By contrast, where the information provided by the source is only of peripheral or collateral importance, then the

---

7. We note in this regard that we are unconvinced by Plaintiffs' arguments as to even the minimal relevance of the names of at least the pre-publication contacts to the magazine. The facts set out in the brief fail to demonstrate how they will lead to the discovery of admissible evidence. That, however, is not a jurisdictional or privilege issue which we find appropriate to address by way of an extraordinary writ without a full record.

need for discovery is less strong and the importance of the promise of confidentiality looms larger. *See Baker v. F & F Inv.* 470 F.2d 778, 784 (2d Cir.1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). *See also Branzburg,* 408 U.S. at 710, 92 S.Ct. at 2671 (Powell, J., concurring) (stating that a journalist should not be required to disclose "information bearing only a remote and tenuous relationship to the subject of the investigation").

Here, it is uncontested that the magazine article did not actually use or rely on the three pre-publication sources, and the other sources were not spoken to until after publication. Therefore, nothing said by any of these sources could be crucial to or go to the heart of the allegedly libelous article. As a result, because the privileged sources sought by Plaintiffs are not essential to the claim, and indeed are at best of marginal relevance to the claim, this factor favors application of the privilege here.

■ Plaintiffs do not deny that the names of the pre-publication contacts do not go to the heart of the claim, and we find the same to be true of the post-publication contacts.[8] Instead, Plaintiffs offer an additional argument which is actually predicated on the reporters' lack of reliance on the contacts at issue. More specifically, Plaintiffs argue that precisely because the magazine did not print anything said by the truckers who contacted the magazine before or after publication, no privilege attaches at all. Plaintiffs argue that a privilege attaches only to a confidential source if the source's information was actually relied on in the actual published article. Once the article is published, any source who turned out not to be relied on thereby has automatically been shown not to be a source, and therefore has no protection. Similarly, any post-publication contacts obviously were not a source of the article itself, and therefore enjoy no protection despite promises of confidentiality.

Plaintiffs have failed to cite any authority for their proposition. If accepted, Plaintiffs'

argument would turn the traditional test for determining privilege on its head. Even crucial information might not be discoverable if the source were relied on in preparing the article, and a source of peripheral information could be discoverable precisely because it was not relied on. This would put a premium on reporters including a tiny bit of what every source had said in each article, for fear that a failure to do so would waive any prior promise of confidentiality. Moreover, reporters could not give a promise of confidentiality to anyone they talked with after an article was published unless they were sure that a second article would follow, which would use the later-acquired information.

Even more importantly, such hindsight application of the privilege would have a devastating affect on a journalist's ability to obtain a free flow of information. As Relators aptly note:

> If the application of the privilege turned on whether journalists used the information, neither the source nor the journalist would be able to tell whether the information was potentially privileged at the time the source provided it. The source would refuse to provide information because the journalist could not offer any assurance of confidentiality.

> Confidential contacts upon which a journalist does not rely to support a published statement are as important as confidential contacts upon which that journalist does rely. Information from a confidential source can lead to non-confidential information or sources willing to provide "on-the-record" quotations. The value of a confidential contact does not depend upon whether the journalist relies on it in making a statement in a published story.

Because of just such concerns, courts have protected sources whether or not their information made its way into a published story where, as here, it is undisputed that confidentiality was promised as to even the unpublished information. *See, e.g., Foretich v. Advance Magazine Publishers, Inc.,* 765

---

8. While Plaintiffs argue that the post-publication contacts may go to damages since they could provide information about the libelous affect of the article, there has also been no showing that obtaining the response of these contacts is of crucial importance in light of the fact that many thousands of truckers read the magazine.

F.Supp. 1099, 1111 (D.D.C.1991).[9] Nearly every court recognizes confidentiality is most important where, as here, nearly all of the information sought is the names of confidential sources. *Miller,* 621 F.2d at 725 (stating, "policies supporting a First Amendment privilege would appear to be stronger here, where a defamation plaintiff seeks to compel disclosure of the name of a confidential informant...", although court held that privilege must yield in this particular case); *Continental Cablevision,* 583 F.Supp. at 434 ("Thus, a lesser showing of need and materiality may be required in the situation where discovery of non-confidential material is sought than where the identity of confidential sources is sought."). On these facts, we hold that the rationale for application of a privilege applies to the confidential unpublished sources at issue here.

We further note that, while no prior Missouri court has reached this particular issue, our holding is consistent with the rationale applied by Missouri courts in protecting attorney work-product from discovery in a case other than the one which was in progress at the time the work-product was created. Our courts have recognized that the work-product doctrine continues to apply to protect the work-product from discovery in related cases, since the real issue is whether or not "the document can fairly be said to have been prepared or obtained because of the prospect of litigation"—whether the litigation in question or some other. *State ex rel. Day v. Patterson,* 773 S.W.2d 224, 228 (Mo.App. 1989) (quoting 8 Wright & Miller, *Federal Practice and Procedure,* § 2007 at 198 (1970)). *See also State ex rel. Safeco Nat. Ins. Co. of America v. Rauch,* 849 S.W.2d 632 (Mo.App.1993).

Similarly, if the journalist obtained information from the source in the course of research for an article, the reasons for recognizing a privilege apply whether or not the journalist used that particular source in the article the journalist was initially researching or retained it for future use, or used it as background in developing non-confidential sources.

### 4. Strength of Case.

The final factor to consider in balancing the need for confidentiality versus discovery is the strength of the movant's case for libel. "As a threshold matter, the court should be satisfied that a claim is not frivolous." *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583, 597 (1st Cir.1980). If the case is weak, then little purpose will be served by allowing such discovery, yet great harm will be done by revelation of privileged information. In fact, there is a danger in such a case that it was brought just to obtain the names of informants. On the other hand, if a case is strong and the information sought goes to the heart of it and is not available from other sources, then the balance may swing in favor of discovery if the harm from such discovery is not too severe. *See Southwell v. Southern Poverty Law Center,* 949 F.Supp. 1303, 1311 (W.D.Mich.1996) (holding that a court may deny disclosure of a confidential source if the record supports defendant's motion for summary judgment and that summary judgment is proper without disclosure of confidential source if plaintiff fails to produce evidence that article is either inherently improbable or published with serious doubts about the truth of its contents).

Here, Relators argue that the case is extremely weak, for the allegedly libelous information was all in the form of opinions based on facts contained in the article itself and that the article did not imply that its authors had additional facts which were unpublished but which supported the opinion. If so, then Plaintiffs have failed to state a claim, and there would be no point to allowing discovery. Plaintiffs argue, however, that they can show that the libelous statements were more than just opinions, and that they did imply

---

9. In fact, many courts actually offer protection, albeit in somewhat more limited form, where there was no promise not to reveal the source of unpublished information. *Shoen v. Shoen,* 5 F.3d 1289, 1294–1295 (9th Cir.1993); *Cuthbertson,* 630 F.2d 139; *Brinston v. Dunn,* 919 F.Supp. 240 (S.D.Miss.1996); *Altemose Constr.*

*Co. v. Building & Constr. Trades Council of Philadelphia and Vicinity,* 443 F.Supp. 489, 491 (E.D.Pa.1977). Other courts, however, have held that the rationale for the privilege does not apply to non-confidential, unpublished material. *See, e.g., United States v. LaRouche Campaign,* 841 F.2d 1176 (1st Cir.1988).

that the authors had additional facts to support their headline statements. It is difficult to resolve this issue on the limited record before us, and we need not do so, for application of the other relevant factors mandates recognition of the privilege.

Accordingly, we make our writ absolute and order the circuit court to withdraw its order of January 8, 1997, which had compelled Relators to reveal the noted information, and direct the circuit court not to order revelation of the confidential information at issue here.

All concur.